IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 99-00473 SOM |
| | ) | CIV. NO. 09-00474 SOM/KSC |
| Plaintiff, | ) | |
| | ) | ORDER DENYING MOTION TO |
| vs. | ) | VACATE, SET ASIDE, OR CORRECT |
| | ) | A SENTENCE BY A PERSON IN |
| SEAN MATSUNAGA, | ) | FEDERAL CUSTODY UNDER 28 |
| | ) | U.S.C. § 2255 |
| Defendant. | ) | |
| _____ | ) | |

ORDER DENYING MOTION TO VACATE, SET ASIDE, OR
CORRECT A SENTENCE BY A PERSON IN FEDERAL
CUSTODY UNDER 28 U.S.C. § 2255

I.      INTRODUCTION.

        In 1999, Sean Matsunaga and three other men robbed a
bank in Oahu.  They stole more than $100,000, shot at the police,
and injured innocent bystanders.  A jury found Matsunaga guilty
of conspiracy, bank robbery, and two counts of carrying a firearm
in furtherance of that conspiracy.  After two unsuccessful
appeals, Matsunaga brings the present petition under 28 U.S.C.
§ 2255, arguing that his sentence and conviction are erroneous in
eleven ways.  This court denies the petition without a hearing
and declines to issue a certificate of appealability.

II.     STANDARD OF REVIEW.

        Under § 2255, a court may grant relief to a federal
prisoner who challenges the imposition or length of his or her
incarceration on any of the following four grounds: (1) that the
sentence was imposed in violation of the Constitution or laws of

the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; or (4) that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). A petitioner must allege specific facts that, if true, would entitle the petitioner to relief. See United States v. Rodrigues, 347 F.3d 818, 824 (9th Cir. 2003) (citing United States v. McMullen, 98 F.3d 1155, 1159 (9th Cir. 1996)).

A § 2255 petition cannot be based on a claim that has already been disposed of by the underlying criminal judgment and ensuing appeal. As the Ninth Circuit stated in Olney v. United States, 433 F.2d 161, 162 (9th Cir. 1970), "Having raised this point unsuccessfully on direct appeal, appellant cannot now seek to relitigate it as part of a petition under § 2255."

Even when a § 2255 petitioner has not raised an alleged error at trial or on direct appeal, the petitioner is procedurally barred from raising an issue in a § 2255 petition if it could have been raised earlier, unless the petitioner can demonstrate both "cause" for the delay and "prejudice" resulting from the alleged error. As the Court said in United States v. Frady, 456 U.S. 152, 167-68 (1982), "[T]o obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and 'actual

2

prejudice' resulting from the errors of which he complains."
Id.; accord Davis v. United States, 411 U.S. 233, 242 (1973).  To
show "actual prejudice," a § 2255 petitioner "must shoulder the
burden of showing, not merely that the errors at his trial
created a *possibility* of prejudice, but that they worked to his
actual and substantial disadvantage, infecting his entire trial
with error of constitutional dimensions."  Frady, 456 U.S. at
170.

A judge may dismiss a § 2255 petition if "it plainly
appears from the motion, any attached exhibits, and the record of
prior proceedings that the moving party is not entitled to
relief."  Rule 4(b), Section 2255 Rules.  A court need not hold
an evidentiary hearing if the allegations are "palpably
incredible or patently frivolous" or if the issues can be
conclusively decided on the basis of the evidence in the record.
See Blackledge v. Allison, 431 U.S. 63, 76 (1977); see also
United States v. Mejia-Mesa, 153 F.3d 925, 929 (9th Cir. 1998)
(noting that a "district court has discretion to deny an
evidentiary hearing on a § 2255 claim where the files and records
conclusively show that the movant is not entitled to relief").

III.    BACKGROUND.

On July 7, 1999, Matsunaga, Albert Batalona, Jacob
Hayme, and Roger Dailey robbed the American Savings Bank located

3

in Kahala on Oahu.  Wearing ski masks and armed with weapons,[1]
they entered the bank and ordered everyone to lie on the floor.
Transcript of Proceedings ("Transcript") Volume 3 at 11-13, 167
(bank employee describing events) (Sept. 26, 2002).  Some bank
employees were pushed to the floor and hit with a rifle.
Transcript Volume 3 at 13, 27, 167.  The men took more than
$100,000 from the teller cash dispenser that contained bait bills
and dye packs.  Id. at 88-91, 110.  The dye packs exploded when
they were taken from the bank.  Id. at 20, 54.

Because a bank employee had pushed a silent alarm that
alerted the police that there was a problem, police were waiting
outside the bank.  Id. at 23.  Batalona shot at the police.  Id.
at 34, 96, 136.  Matsunaga, Hayme, and Dailey escaped together,
while Batalona, still armed and wearing a face mask, stopped a
bakery delivery van and escaped in that van.

Shortly thereafter, the four men were arrested.[2]

---

[1]Matsunaga and Hayme carried semiautomatic assault weapons,
while Batalona was armed with a machine gun.  Transcript Volume 5
at 164-71 (Oct. 1, 2002).

[2]Dailey was arrested, pled guilty to bank robbery, and was
sentenced to a 75-month term of imprisonment.  See Judgment,
99cr442, Docket No. 44 (Aug. 1, 2003).  Hayme and Batalona were
arrested, and Batalona was convicted in state court of robbery,
attempted murder, use of a firearm in the commission of a
separate felony, and possession of a prohibited firearm.  Hayme
pled guilty to Counts 1 to 3 in the Superseding Indictment, and
this court sentenced him to 60 months of imprisonment on Count 1,
92 months of imprisonment on Count 2 (concurrent with the
sentence on Count 1), and 120 months of imprisonment on Count 3
(consecutive to the sentence on Count 2).

4

Subsequently, a Superseding Indictment issued charging Matsunaga and Hayme with five counts.  Count 1 charged Matsunaga and Hayme with conspiring with others to rob a bank in violation of 18 U.S.C. § 2113(a).  Count 2 charged Matsunaga and Hayme with bank robbery in violation of 18 U.S.C. § 2113(a).  Counts 3 and 4 charged Matsunaga and Hayme with knowingly carrying semiautomatic assault weapons during the robbery in violation of 18 U.S.C. §§ 921(a)(30), 924(c)(1)(A), and 2.  Specifically, Count 3 charged Matsunaga and Hayme with being responsible for the carrying of a Norinco .223 semi-automatic assault weapon (Hayme's alleged weapon), while Count 4 charged Matsunaga and Hayme with being responsible for the carrying of a AR-15 .223 semi-automatic assault weapon (Matsunaga's alleged weapon).  Count 5 charged Matsunaga and Hayme with being responsible for the carrying of a machine gun (Batalona's alleged weapon).  Id. Matsunaga was thus charged with carrying three weapons during the bank robbery: two firearms carried by his co-conspirators, and his AR-15 semiautomatic weapon, which was never recovered.

Matsunaga's trial began in September 2003.  Bank employees, the owner of the van that Batalona escaped in, friends of Matsunaga's and Hayme's, police officers, and others testified.  Transcript of Proceedings Volume 4 at 27 (Sept. 27, 2002).  Before closing arguments, the parties met to discuss jury instructions.  Matsunaga objected to a Pinkerton instruction that

5

explained that Matsunaga could be liable for the foreseeable acts of his co-conspirators committed in furtherance of the conspiracy, to the extent the instruction applied to Counts 3, 4, and 5 (knowingly carrying a firearm in furtherance of a crime). Matsunaga argued that, under 18 U.S.C. § 924(c), he could not be guilty as a co-conspirator, but only as a principal or as an aider or abettor.  Transcript Volume 7 at 46-47.  According to Matsunaga, the Government had to prove that Matsunaga knew that Batalona and Hayme would carry guns during the robbery; conspiring to commit the robbery, without more, was not sufficient.  The court overruled his objection.

On October 8, 2002, the jury found Matsunaga guilty on Counts 1 through 4 of the Superseding Indictment, but not guilty on Count 5. This court ordered judgment of acquittal as to Count 5.  This court scheduled a sentencing hearing and requested a Presentence Investigation Report ("PSR").

The PSR calculated Matsunaga's offense level as 32.  In arriving at the total offense level under the then-mandatory United States Sentencing Guidelines, the PSR included a two-level increase for "bodily injury" to a victim pursuant to U.S.S.G. § 2B3.1(b)(3)(A) because Matsunaga's co-conspirators had injured a bank employee and a police officer; a two-level increase for physical restraint of any person pursuant to U.S.S.G. § 2B3.1(b)(4)(B) because Matunaga's co-conspirators ordered bank

customers to lie on the floor at gunpoint; a two-level increase

for carjacking pursuant to U.S.S.G. § 2B3.1(b)(5) because

Batalona had stolen a van and fled from police; and a two-level

adjustment for the reckless creation of a risk of death or

serious bodily injury in fleeing from a law enforcement officer

(reckless endangerment) pursuant to U.S.S.G § 3C1.2 because

Batalona and Hayme had shot at police.  Additionally, the PSR

noted that Matsunaga was subject to a 10-year term for the

§ 924(c) offenses.

Matsunaga objected to the two-level increases and to

the 10-year term for carrying a semiautomatic weapon.  Matsunaga

argued that, because he had not personally injured anyone, the

two-level increase for bodily injury was inapplicable.  See

Response to Draft Presentence Investigation Report (Jan. 21,

2002); see also Sentencing Transcript at 17 (Jan. 21, 2003).

With respect to physical restraint, Matsunaga argued that merely

pointing a gun at someone and ordering the person to lie on the

floor was not the "physical restraint" contemplated by the

Sentencing Guidelines.  Id. at 18-19.  Additionally, Matsunaga

stated that Batalona's carjacking was a "detour and frolic" from

the conspiracy and was not foreseeable by the other participants,

making the two-level increase for Batalona's carjacking

inapplicable.  Id. at 23.  Matsunaga argued that, as he was not

fleeing law enforcement but instead fleeing the bank, the two-

level adjustment for reckless endangerment was inapplicable.  Id.
at 27-28.  Finally, Matsunaga argued that he could only be
sentenced to seven years of imprisonment on the § 924(c) charges.
Matsunaga argued that the Superseding Indictment charged him with
having violated § 924(c)(1)(A) (which states that a person can be
sentenced to a term of not less then seven years for brandishing
a firearm), not § 924(c)(1)(B) (which imposes a mandatory minimum
of 10 years if the firearm is a semiautomatic assault weapon), so
he could not be sentenced to a 10-year term.

        The sentencing hearing spanned two sessions.  At the
first session, held in January 2003, this court overruled
Matsunaga's objections, adopted the PSR as its findings, and
determined that the guideline enhancements were appropriate.
With respect to the 10-year minimum on the § 924(c) charges, the
court stated that, because the Superseding Indictment charged
Matsunaga with having used a semiautomatic assault weapon,
Matsunaga had notice that he could be prosecuted under
§ 924(c)(1)(B), which set a 10-year term of imprisonment for the
use of a semiautomatic weapon.  Id. at 29.  The court then
requested briefing on how to handle the two § 924(c) charges and
continued the sentencing hearing.  Id. at 54.

        At the next sentencing session, the court asked the
parties whether United States v. Franklin, 321 F.3d 1231 (9th
Cir. 2003), decided in March 2003, affected Matsunaga's reckless

8

endangerment two-level increase and the § 924(c) charges.  With

respect to reckless endangerment, <u>Franklin</u> held that the

Government must prove that a defendant "actively participated" in

the conduct that recklessly endangered others.  <u>Id.</u> at 1237.

Therefore, a defendant who was part of a getaway chase was

"responsible for or brought about" the conduct by both himself

and his co-conspirators that put others at risk.  <u>Id.</u>

Additionally, <u>Franklin</u> held that multiple convictions under

§ 924(c)(1) against one defendant must be consolidated.  <u>Id.</u> at

1241.  This court was concerned about whether it should

consolidate the § 924(c) charges and sentence Matsunaga on only a

single charge, or, alternatively, vacate the conviction on one

charge.  Sentencing Transcript at 8 (Mar. 24, 2003).

After listening to the parties, the court concluded

that the two-level increase for reckless endangerment was

justified.  The court stated:

> I find that the defendant's conduct did
> constitute reckless endangerment during
> flight.  And in making that finding I
> recognize that that requires a finding by me
> that Mr. Matsunaga did something more than
> just willfully participating in fleeing from
> law enforcement, but I also recognize that I
> can make inferences and rely on evidence of
> what occurred before, during and after they
> fled from law enforcement. . . . [W]hen Mr.
> Matsunaga left the scene, it does seem to me
> that he was fleeing from law enforcement
> [and] the only reason to exchange gunfire was
> because law enforcement was there.
>
> With respect to whether he procured or aided

> and abetted Mr. Batalona's use and Mr.
> Hayme's use of a gun, it does seem to me here
> that in the context here where the defendants
> had made plans to make sure they were armed
> in case they needed to use guns, they had
> joint getaway plans, and, indeed, when law
> enforcement arrived, the guns did turn out to
> have to be used.  So, indeed, it could be
> said, I think, that Mr. Matsunaga procured
> the further exchange of gunfire by leaving
> himself and not just giving up.

Id. at 14-15.

As to the two § 924(c) charges, the court concluded that it could not impose a sentence for each charge, as the same defendant was alleged to be responsible for two guns carried in furtherance of the same crime.  Because one § 924(c) count related to Matsunaga's use of a gun, and another § 924(c) count related to a co-conspirator's use of a gun, the court concluded that it should vacate the conviction on one count.  Id. at 8. The Government moved to vacate the conviction on Count 4 (§ 924(c) charge concerning Matsunaga's alleged weapon) because Matsunaga's weapon was not recovered.  Id. at 14.  The court vacated that conviction.

Matsunaga was sentenced to 60 months of imprisonment on Count 1 (conspiracy), 151 months of imprisonment on Count 2 (bank robbery) running concurrently with Count 1, and 10 years of imprisonment on Count 3 (§ 924(c)) running consecutively to the sentence on Count 2.  Id. at 20-22.  Matsunaga was thus sentenced to a total of 271 months in prison.

Matsunaga appealed in April 2003.  He argued, among other things, that the court had erroneously calculated his sentence.  Ex. D, attached to Government's Response.  Matsunaga challenged the court's two-level increases for injury to a victim and for a co-defendant's carjacking.  Matsunaga argued that, although victims were injured, he did not cause those injuries and they were not foreseeable.  Additionally, Matsunaga stated that it was not foreseeable that his co-defendant would steal a van.  Id. at 13-14.

The Ninth Circuit found Matsunaga's arguments unavailing and affirmed this court.  As to the enhancement for the injury to a victim, the Ninth Circuit noted that the Sentencing Guidelines provide that if two defendants agree to commit a robbery, and the first defendant assaults and injures a victim, the second defendant is accountable for the assault and injury, even if the second defendant did not agree to the assault and cautioned the first defendant to be careful.  See United States v. Matsunaga, 158 Fed. App'x 783, 785 (9th Cir. 2005).  As to the carjacking enhancement, the Ninth Circuit noted that, as three of the men left the fourth co-conspirator behind when they escaped, it was reasonably foreseeable that the stranded co-defendant would seek another means of escape.  Thus, it was foreseeable that Batalona would commit a carjacking.

However, because, after Matsunaga was sentenced, the

11

United States Supreme Court decided <u>United States v. Booker</u>, 543 U.S. 220 (2005), which made the Sentencing Guidelines advisory only, the Ninth Circuit remanded the sentence to this court to "answer the question whether Matsunaga's sentence would have been different had the court known that the guidelines were advisory." <u>Id.</u> at *785 (brackets omitted).

The Probation Office amended the PSR to reflect that the court had vacated the conviction on Count 4 and also to add the sentences imposed on Hayme and Dailey.  Matsunaga filed a sentencing memorandum requesting a reduction from 271 months to 255 months of imprisonment.

In 2006, the court resentenced Matsunaga.  The court considered whether it would have imposed the same sentence had it known that the Sentencing Guidelines were advisory.  <u>See</u> Resentencing Transcript, Docket No. 278 at 7 (Mar. 21, 2006). The court concluded that it would have imposed the same sentence, considering, among other things, the nature and circumstances of the offense, Matsunaga's history and characteristics, and the seriousness of the crime.  <u>Id.</u> at 8.

Matsunaga filed an appeal on March 29, 2006, again challenging, albeit under a different theory, the two-level increases to his offense level.  Matsunaga argued that this court had violated Matsunaga's right to a jury trial by enhancing his sentence based on the court's, not the jury's, factual

12

conclusions.  Ex. E, attached to Government's Response.
Specifically, Matsunaga argued that his sentence was based on
five extra-verdict, judicial findings: (1) that Matsunaga's
conduct constituted reckless endangerment during flight; (2) that
Matsunaga was responsible for the injury to innocent bystanders;
(3) that Matsunaga physically restrained some victims; (4) that
Matsunaga was responsible for Batalona's carjacking; and (5) that
Matsunaga caused monetary losses.  Ex. E at 31, 37 attached to
Government's Response.  Matsunaga argued that the Government had
not provided notice of these allegations, or their factual bases,
in the Superseding Indictment.  Id.  Matsunaga argued that the
Ninth Circuit should review the sentence for plain error.

The Ninth Circuit held that Matsunaga had not raised
any reviewable issues because he had challenged the two-level
increases on his first appeal and had lost:

> Matsunaga contends that the district court
> violated his Sixth Amendment rights by
> relying on judge-found facts to increase his
> sentence.  We conclude that the district
> court understood "the full scope of [its]
> discretion in a post-Booker world," see
> United States v. Combs, 470 F.3d 1294, 1297
> (9th Cir. 2006), and that Matsunaga has not
> raised any issues that are reviewable, see
> United States v. Thornton, 511 F.3d 1221,
> 1226 (9th Cir. 2008).

284 F. App'x 455, 456 (9th Cir. 2008).

On October 8, 2009, Matsunaga filed the present § 2255
petition.  On November 9, 2009, Matsunaga supplemented his

13

petition by filing a 57-page memorandum.  In total, Matsunaga

alleges 11 grounds for relief, the majority including some type

of ineffective assistance of counsel claim.  On March 23, 2010,

the Government filed its response.  Matsunaga was expressly

allowed to file but has not filed a reply.

IV.      ANALYSIS.

         As an initial matter, this court notes that Matsunaga

raises many arguments for the first time in his § 2255 petition.

If a "criminal defendant could have raised a claim of error on

direct appeal but nonetheless failed to do so, he must

demonstrate both cause excusing his procedural default, and

actual prejudice resulting from the claim of error."  United

States v. Johnson, 988 F.2d 941, 945 (9th Cir. 1993).  Matsunaga

claims that his counsel was ineffective in failing to raise these

arguments during trial as cause for the delay.  Even if that is

sufficient cause, Matsunaga has not established any prejudice.

         A.       Ground 1.

         In Ground 1, Matsunaga contends that the Superseding

Indictment was constitutionally defective because it did not

provide notice that he could be tried and convicted for Hayme's

actions.  Memorandum at 7, 45.  Matsunaga also argues that his

counsel was ineffective in failing to challenge the

constitutionality of the Superseding Indictment during trial and

on appeal.

According to Matsunaga, the Superseding Indictment is defective because it "did not charge that Matsunaga CONSPIRED with Defendant [Hayme] to knowingly carry his firearm in furtherance of the bank robbery." Memorandum at 10. Because the Superseding Indictment did not charge Matsunaga with specifically conspiring with Hayme for Hayme to carry a weapon, Matsunaga says he lacked notice that he could be charged under § 924(c) based on Hayme's weapon. Matsunaga's argument fails.

To give a defendant proper notice, an indictment must state the elements of an offense charged with sufficient clarity to apprise a defendant of what he must be prepared to defend against. Gautt v. Lewis, 489 F.3d 993, 1003 (9th Cir. 2007).

Matsunaga's Superseding Indictment gave Matsunaga proper notice of the charges. Counts 3 to 5 charge him and Hayme, both as principals and as aiders and abettors, with carrying weapons to commit a crime of violence, in violation of 18 U.S.C. § 924(c). Count 1 charges that Defendants conspired to rob a bank by putting on dark clothing and masks, entering American Savings Bank carrying semiautomatic assault weapons, and then leaving the parking lot together. Superseding Indictment ¶¶ 1-6. It put Matsunaga on specific notice that the weapons referred to included "a Norinco .223 caliber semi-automatic assault weapon" and "an AR-15 .223 caliber semi-automatic assault weapon." Superseding Indictment at 4-5.

15

Matsunaga argues that his trial counsel and appellate counsel were ineffective by failing to challenge the Superseding Indictment.  As the Superseding Indictment gave Matsunaga proper notice of the charges, Matunaga's counsel did not perform unreasonably.

Matsunaga appears primarily concerned not with defects in the Superseding Indictment, but with certain jury instructions.  Matsunaga argues that this court incorrectly gave the jury a <u>Pinkerton</u> instruction, that is, instructed the jury that Matsunaga could be liable for the foreseeable crimes of co-conspirators taken in furtherance of the conspiracy.

As Matsunaga did not raise this argument on direct appeal, this challenge is procedurally barred unless he can show cause for the delay and prejudice.  Matsunaga argues that the reason this issue was not raised earlier is that his counsel was ineffective at trial and on appeal.  <u>See</u> <u>Johnson</u>, 988 F.2d at 945.  However, as his counsel argued against the <u>Pinkerton</u> instruction at trial, Matsunaga cannot establish that his trial counsel was ineffective.  While Matsunaga says that he asked his appellate counsel to challenge the Superseding Indictment on appeal, Matsunaga has not established that any failure to do so was prejudicial.  That is because the Superseding Indictment is not defective.

Under <u>Pinkerton v. United States</u>, 328 U.S. 640, 647-48

16

(1946), a person is vicariously liable for reasonably foreseeable substantive crimes committed by a co-conspirator in furtherance of the conspiracy.  A defendant who is charged with conspiracy may also be convicted under a Pinkerton theory for a charged violation of 18 U.S.C. § 924(c), even if it was the defendant's co-conspirator who used and carried the gun.  United States v. Fonseca-Caro, 114 F.3d 906, 908 (9th Cir. 1997).  Of course, if a defendant is not charged with conspiracy, a Pinkerton instruction cannot be given with respect to the § 924(c) charge.  United States v. Nakai, 413 F.3d 1019, 1023 (9th Cir. 2005).

Before closing arguments, the parties discussed whether a Pinkerton instruction on the § 924(c) charges was warranted.  Matsunaga's attorney asked the court to instruct the jury that the Government had to prove that Matsunaga had personally carried, or aided and abetted, others in carrying the firearm for the jury to find Matsunaga guilty under § 924(c).  Transcript Volume 7 at 46.  The Government stated that Matsunaga could be convicted under § 924(c) if it was reasonably foreseeable that co-conspirators would carry guns in furtherance of the robbery.  This court concluded that the Government was correct, and gave the jury a Pinkerton instruction.  Id. at 148.

Matsunaga argues that a Pinkerton instruction applies

17

only to a conspirator,[3] and that he was not charged with conspiracy in Counts 3 to 5.  Matsunaga's argument is premised on a confused understanding of the nature of § 924(c) charges and conspiracy charges.  Section 924(c) makes it a crime for any person to use or possess a firearm in furtherance of a crime of violence, such as a bank robbery.  While an individual must use or possess a weapon to be guilty for a § 924(c) charge, a conspirator may be liable for the acts of his co-conspirators. Thus, if Hayme carried a gun in furtherance of the bank robbery conspiracy in violation of § 924, then Matsunaga could also be guilty of Hayme's crime.  Because he was charged with a conspiracy to rob a bank, and because he and his co-conspirators used weapons in the process, the court did not err in giving a conspiracy instruction that applied to any gun charge.

---

[3]Matsunaga also argues that the court "constructively amended" the Superseding Indictment by broadening the jury instructions in a way that allowed the jury to convict him of an offense with which he was never charged.  Memorandum at 12. However, as Matsunaga was charged with these offenses, the court could not have constructively amended the Superseding Indictment. "An amendment of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has last passed upon them."  United States v. Freeman, 498 F.3d 893, 907 (9th Cir. 2007) (quotations omitted).  A constructive amendment occurs when there is "a complex of facts [presented at trial] distinctly different from those set forth in the charging instrument," or when "the crime charged [in the indictment] was substantially altered at trial, so that it was impossible to know whether the grand jury would have indicted for the crime actually proved." Id. (quotations omitted).  No constructive amendment occurred in this case.

18

B.        Ground 2.

Matsunaga argues that his trial counsel was ineffective in failing to properly support a motion for acquittal brought at the close of the Government's case.  Matsunaga also says his sentencing counsel was ineffective in allowing this court to sentence Matsunaga on Count 3, instead of Count 4.  Finally, he says that appellate counsel was ineffective in failing to raise that issue on appeal.  Matsunaga has not established ineffectiveness.

To prevail on an ineffective assistance of counsel claim, a petitioner must show both that his counsel's performance fell below an objective standard of reasonableness, and that the deficiency in his counsel's performance prejudiced him.  Strickland v. Washington, 466 U.S. 668, 688, 692 (1984).  There is a "strong presumption" that counsel's conduct was reasonable.  Id. at 689.

At the close of the Government's case, Matsunaga's counsel orally moved for judgment of acquittal.  Transcript Volume 7 at 80.  The court immediately denied the motion, and asked that the defense proceed.  Id.  Matsunaga's counsel again moved for judgment of acquittal at the close of the defense case, and this court denied the motion.  Transcript Volume 7 at 164.

Matsunaga argues that his counsel was ineffective in failing to support the motion for acquittal with evidence.

19

However, Matsunaga does not identify what evidence would have established that Matsunaga was entitled to such judgment.

A motion for judgment of acquittal is reviewed on a sufficiency-of-the-evidence standard.  United States v. Graf, 2010 WL 2671813, *13 (9th Cir. 2010).  Under that standard, the evidence supports a conviction, if, viewed in the light most favorable to the Government, it would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt.  Id.

Having listened to the Government's case, the court had before it all the evidence that had been admitted.  Based on the testimony of bank employees, Matsunaga's co-conspirator Dailey, and others, this court concluded that the evidence was sufficient to allow the jury to find the essential elements of the charged crimes beyond a reasonable doubt.  There was sufficient evidence that the men, including Matsunaga, had met, planned, and discussed the bank robbery (conspiracy), carried out that bank robbery (bank robbery), and carried semiautomatic weapons and a machine gun to rob the bank (§ 924(c) charges).  While the jury found that Count V was not proved beyond a reasonable doubt, on a motion for judgment of acquittal, the court looks at the evidence in the light most favorable to the Government.  Accordingly, Matsunaga has not shown that his counsel was ineffective or that Matsunaga was prejudiced with regard to the motion for judgment

of acquittal.

Matsunaga argues next that his appellate counsel was ineffective in failing to argue that the evidence was insufficient to support a guilty verdict on Count 3. Matsunaga argues that he was wrongly convicted on Count 3 because he did not carry Hayme's gun. Matsunaga is simply incorrect.

The court instructed the jury that Matsunaga could be guilty, even if he did not personally carry the weapon, as a conspirator or aider and abettor. This court gave a proper conspiracy instruction, as a defendant charged with conspiracy may be convicted under § 924(c) based on his co-conspirator's use of a weapon. The court also gave an aiding and abetting instruction. To be guilty of aiding and abetting, the court stated that the Government had to prove that (1) a firearm was carried by someone during and in relation to a crime of violence; (2) Matsunaga knowingly and intentionally aided, counseled, or commanded that person to carry a firearm during the crime of violence; and (3) Matsunaga acted before the crime was completed. Transcript Volume 7 at 153-154.

There was overwhelming evidence that Matsunaga could have been liable as a co-conspirator or as an aider and abettor. With respect to the conspiracy, Hayme pled guilty to having carried a weapon in furtherance of the crime. A jury conclusion that Matsunaga, as a co-conspirator, was guilty based on Hayme's

21

foreseeable actions in furtherance of the robbery would have been consistent with applicable law and the trial evidence.

With respect to aiding and abetting, there was evidence that Hayme and Matsunaga carried weapons, that Matsunaga aided and abetted Hayme in using his weapon, and that Hayme used it in furtherance of the bank robbery.  There was evidence that before the robbery, Batalona, Hayme, and Matsunaga discussed carrying their weapons during the robbery.  Transcript Volume 5 at 154-155.  Shortly before the robbery, Hayme placed a magazine into Matsunaga's gun.  Transcript Volume 5 at 168.  Additionally, there was evidence that Hayme and Matsunaga carried and brandished their weapons when entering the bank, throughout the robbery, and during the escape.[4]

Matsunaga argues that he did not encourage Hayme to shoot the gun.  However, evidence that Matsunaga encouraged Hayme's use or possession of the gun during the bank robbery is sufficient to sustain Matsunaga's conviction; Matsunaga need not have encouraged Hayme to shoot.

C.      Ground 3.

Matsunaga argues that his counsel was ineffective in failing to argue that the court should sentence Matsunaga to

---

[4]Additionally, at sentencing, this court acknowledged that, while mere knowledge that a firearm is to be used is insufficient to create aiding and abetting liability, there was sufficient evidence that Matsunaga facilitated and encouraged the carrying of the firearm.  Sentencing Transcript at 14-15 (Mar. 24, 2003).

Count 4, not Count 3.   Matsunaga has not established
ineffectiveness.

     The jury found Matsunaga guilty of Count 3 and 4, which
charged Hayme and Matsunaga with having carried weapons in
furtherance of a crime in violation of § 924(c).  Because the
counts arose out of the same offense, this court did not sentence
Matsunaga on both of them.  See Franklin, 321 F.3d at 1241
("Multiple counts charged under section 924(c)(1) must be
consolidated either before or after trial, and before sentencing,
so that there will be only one section 924(c)(1) conviction for
one predicate offense.") (internal quotations omitted).  The
Government requested that the court sentence Matsunaga on Count 3
(allegedly involving the gun Hayme used) because Matsunaga's gun
was not recovered, Hayme's gun was recovered, and Hayme had pled
guilty to using that weapon.  Matsunaga's counsel suggested that
the court dismiss Count 4.  The court vacated the conviction on
Count 4.

     Matsunaga argues that his counsel performed
unreasonably by failing to ask this court to sentence him to
Count 4.  Matsunaga says that, had he been sentenced on Count 4,
there is a reasonable probability that he would have been
successful in appealing his conviction because the evidence did
not support a conviction under Count 4.  Memorandum at 22-23.
Matsunaga argues he was prejudiced, because if this court had

sentenced him on Count 4 instead of vacating it, he might have won his appeal.  Matsunaga has not established prejudice, as the evidence overwhelmingly established his guilt as to Count 4.

Recovery of the actual gun was not necessary to support his conviction.  Evidence at trial indicated that Matsunaga admitted to a friend and to his girlfriend that he had robbed the bank.  Transcript Volume 4 at 76, 176.  Matsunaga's girlfriend, after the robbery, found Matsunaga putting a stash of money in a shoe box.  Id. at 170.  Finally, there was evidence that Matsunaga possessed an M-16.  Transcript Volume 5 at 164.  Many bank employees testified that they saw three men with guns, Matsunaga having been one of them.  That is sufficient.

D.      Ground 4.

Matsunaga argues that he suffered a dramatic and inappropriate enhancement of his sentence.  Matsunaga argues that the court applied the "preponderance of the evidence" standard when it found facts, but should have applied a "clear and convincing" standard.  Memorandum at 24-25.  Matsunaga argues that the "clear and convincing" standard applied to any sentencing enhancement that dramatically increased his sentence, and the "combined impact of the contested sentencing enhancements are extremely disproportionate relative to the offense of conviction, and where the evidence in support of the enhancements was not overwhelming."  Id. at 24.  Matsunaga argues that his

24

counsel was ineffective in failing to object.  Matsunaga has not established that he was prejudiced or that the court applied the wrong standard.

The court increased Matsunaga's offense level by a total of twelve points, based on two-level increases for: (1) property taken from a financial institution; (2) bodily injury of a victim; (3) physical restraint of a person; (4) an offense involving carjacking;, (5) monetary loss between $50,000 and $250,000; and (6) reckless endangerment.

Matsunaga has not identified any statement by the court showing that it applied the "preponderance of the evidence" standard.  The record does not reflect what standard the court used.  At one sentencing session, the court noted that it relied on inferences to determine that the reckless endangerment enhancement was warranted.  However, even inferences could satisfy a "clear and convincing" standard.

Even if this court applied a "preponderance of the evidence" standard at sentencing, Matsunaga does not show that a different result would have flowed from application of a "clear and convincing" standard.  He does not, for example, identify evidence that weighed in his favor for sentencing purposes, or show that the evidence could not have met the "clear and convincing" standard.  Matsunaga does not specify any evidence that weighed in his favor.  See United States v. Fry, 322 F.3d

1198, 1201 (9th Cir. 2003).

Most telling of all, application of the "clear and convincing" standard was not required.  "A district court generally uses a preponderance of the evidence standard of proof when finding facts at sentencing."  United States v. Armstead, 552 F.3d 769, 776 (9th Cir. 2008) (internal quotations omitted). Only "when a sentencing factor has an extremely disproportionate effect on the sentence relative to the offense of conviction" must a court find the facts by "clear and convincing" evidence. Id. (internal quotations omitted).  Six factors are examined to determine whether the "clear and convincing" standard applies:

> (1) whether the enhanced sentence falls within the maximum sentence for the crime alleged; (2) whether the enhanced sentence negates the presumption of innocence for the crime alleged in the indictment; (3) whether the facts offered in support of the enhancement create new offenses requiring separate punishment; (4) whether the increase in sentence is based on the extent of a conspiracy; (5) whether the increase in the number of offense levels is four or less; and (6) whether the length of the enhanced sentence more than doubles the length of the sentence authorized by the initial sentencing guideline range where the defendant would otherwise have received a relatively short sentence.

United States v. Riley, 335 F.3d 919, 926 (9th Cir. 2003).

As to the first element, Matsunaga says that his "sentence of 151 months does not fall within the maximum sentence of 37-46 months for a violation of § 371 and § 2113(a)."

26

Memorandum at 28.  Matsunaga is confusing guideline ranges with statutory maximums.  The maximum sentence for Count 1, charging conspiracy, is 5 years, while the maximum sentence for Count 2, charging bank robbery, is 20 years.  Matsunaga was sentenced to 5 years on Count 1, and 12.58 years (151 months) on Count 2, to run concurrently with Count 1.  His sentence was well within the maximum sentence.

As to the second element, the enhanced sentence did not negate the presumption of innocence or the prosecution's burden of proof for the crime alleged.

As to the third element, the increases did not create new punishments.  All increases related to actions taken in furtherance of a successful bank robbery.

As to the fourth element, the increases were based on the extent of the conspiracy.  "The fact that an enhancement is based on the extent of a conspiracy for which the defendant was convicted weighs heavily against the application of the clear and convincing evidence standard of proof."  United States v. Riley, 335 F.3d 919, 926 (9th Cir. 2003).  The conspiracy was an agreement to take money from a bank (monetary loss and property taken from a financial institution).  Similarly, the physical restraint of a person, the bodily injury inflicted, the carjacking, and the reckless endangerment were all directly related to the force, violence, and intimidation used in

27

furtherance of the conspiracy.  See United States v. Treadwell,
593 F.3d 990, 1001 (9th Cir. 2010) (holding that a 22-level
increase in the defendant's guideline range does not require
clear and convincing evidence because the increase was based on
the extent of the criminal conspiracy).

         With respect to the fifth element, which concerns
whether enhancements total more than four offense levels, no one
enhancement applied to Matsunaga was greater than two levels.
Even if the court aggregates the enhancements, the total of
twelve levels of enhancement does not disproportionately increase
Matsunaga's sentence.  Increases that relate to the extent of a
conspiracy are not generally disproportionate.  See Treadwell,
593 F.3d at 1001 (noting that sentencing enhancements based in
the extent of conspiracy do not require a heightened standard of
proof).  In any event, the Ninth Circuit has never stated that a
heightened standard of proof automatically applies whenever (and
solely because) the number of increased offense levels is greater
than four.  United States v. Pike, 473 F.3d 1053, 1058 (9th Cir.
2007).

         With respect to the sixth element, the enhanced
sentence is not more than double the guideline range.

         Importantly, Matsunaga challenged his sentence on
appeal.  Matsunaga is barred from challenging, or relitigating,
this matter here, and he offers no persuasive evidence or law

that his counsel might have successfully advanced.

Matsunaga has not established entitlement to relief, as he has not shown that he was prejudiced by application of an incorrect standard or that the court in fact applied an incorrect standard.

E.        Grounds 5, 10, And 11.

Matsunaga argues that this court engaged in double-counting when imposing Matsunaga's sentence. Specifically, in Ground 5, Matsunaga argues that this court double-counted by sentencing him to 10 years of imprisonment for § 924(c), while at the same time increasing his offense level based on the actions of his co-conspirators (physical restraint, bodily injury, reckless endangerment, and carjacking) during the robbery. Memorandum at 30. Matsunaga argues that a defendant sentenced for violating § 924(c) cannot have his offense level increased by anything related to the carrying of a firearm. Matsunaga is incorrect.

The applicable guideline for § 924(c) offenses is U.S.S.G. § 2K2.4. That guideline provides that the defendant's guideline sentence is the minimum term of imprisonment set by statute. Note 4 provides:

> If a sentence under this guideline is imposed
> in conjunction with a sentence for an
> underlying offense, do not apply any specific
> offense characteristic for possession,
> brandishing, use, or discharge of an
> explosive or firearm when determining the

29

sentence for the underlying offense.  A
sentence under this guideline accounts for
any explosive or weapon enhancement for the
underlying offense of conviction, including
any such enhancement that would apply based
on conduct for which the defendant is
accountable under 1.3 (Relevant Conduct). Do
not apply any weapon enhancement in the
guideline for the underlying offense, for
example, if (A) a co-defendant, as part of
the jointly undertaken criminal activity,
possessed a firearm different from the one
for which the defendant was convicted under
18 U.S.C. 924(c); or (B) in an ongoing drug
trafficking offense, the defendant possessed
a firearm other than the one for which the
defendant was convicted under 18 U.S.C.
924(c).

This commentary was added "to clarify under what

circumstances defendants sentenced for violations of 18 U.S.C.

§ 924(c) in conjunction with convictions for other offenses may

receive weapon enhancements contained in the guidelines for those

other offenses." Id.; see also United States v. Diaz, 248 F.3d

1065, 1106-07 (11th Cir. 2001) ("The first sentence of the new

application note reinforces what courts have always known when a

defendant is convicted of a § 924(c) violation and an underlying

offense, the defendant's possession of a weapon cannot be used to

enhance the level of the underlying offense.").  This note is

intended to prevent double-counting for firearm use in any one

criminal event. United States v. Pringle, 350 F.3d 1172, 1180

(11th Cir. 2003).  Impermissible double-counting occurs when two

offenses arise from the same criminal act, and an enhancement for

one count is applied even though the basis of the enhancement is

the same as the basis for the accompanying count.  United States
v. Bowman, 215 F.3d 951, 967-68 (9th Cir. 2000).

A court should not increase a defendant's sentence for
an underlying offense "for the same weapon and the same conduct
that underlie the § 924(c) conviction," but a court may increase
a defendant's sentence if the offense level increase and the
mandatory § 924(c) sentence were "imposed for different
underlying conduct."  United States v. Katalinic, 510 F.3d 744,
747 (7th Cir. 2007) (quoting United States v. White, 222 F.3d
363, 373 (7th Cir. 2000)).  For example, if a defendant is
convicted of transporting stolen firearms as well as being a
felon in possession of firearms for the same act of possession,
it would be double-counting to apply an enhancement for stolen
firearms to the felon in possession count.  However, when a
defendant brandishes a gun in a bank robbery and is convicted of
the bank robbery, an enhancement for brandishing the gun is
appropriate if he is not separately convicted for the use of a
gun in a crime of violence under 18 U.S.C. § 924(c).  If he is
separately convicted under § 924(c), the gun enhancement for the
robbery sentence would not be appropriate.  United States v.
Duckro, 466 F.3d 438, 445 (6th Cir. 2006).

Matsunaga reads this note to mean that he should not
have received enhancements for bodily injury, physical restraint,
carjacking, and reckless endangerment because these all relate to

31

the "possession, brandishing, use, or discharge" of a weapon, which was used in the "underlying offense" of the bank robbery. Matsunaga is incorrect.

This court increased Matsunaga's offense level for bodily injuries, carjacking, reckless endangerment, and physical restraint.  While the actions on which these enhancements occurred during an armed robbery, Matsunaga's sentence was not directly increased because of any brandishing, possessing, or use of a firearm.  If the court had applied the seven-level increase for a bank robbery that involves the discharge of a firearm during the course of the robbery, U.S.S.G. § 2B3.1(b)(2)(A), the court would have inappropriately double-counted.  However, that seven-level increase was not applied, given this note.  Put simply, when determining Matsunaga's offense level, the court considered various harms that occurred; the court did not increase the offense level because of the brandishing, possessing, or use of a firearm.

In Grounds 10 and 11, Matsunaga argues that the court erred when it applied enhancements to his offense level for serious bodily injury and reckless endangerment.  He says that the same conduct was the basis for both enhancements, thus constituting double-counting.  He says that trial and appellate counsel were ineffective for failing to raise this issue. However, the same conduct was not the basis for both

32

enhancements.

The two-level increase for serious bodily injury was based on injury to an American Savings Bank employee, who, during the robbery, was hit on the back of his head by a robber, and to a police officer who had cuts resulting from the gunfire exchange.  The two-level increase for reckless endangerment involves the creation of a substantial risk of death when Matsunaga and others fled from law enforcement.  Hayme discharged his weapon in the course of fleeing the scene, and police officers and others in the nearby area were in danger.  There was evidence that bullets flew across the street and into cars and homes.  This court stated that there was a great risk of injury to others.  Transcript at 27, Mar. 23 2010.

As this court did not impermissibly double-count when determining Matsunaga's sentence, Matsunaga has not established that his counsel was ineffective or that he was prejudiced in that regard.

F.      Ground 6.

Matsunaga argues that his counsel was ineffective in failing to object to "any and all enhancements at sentencing." To the extent Matsunaga objects to his attorney's conduct during sentencing, Matsunaga's attorney did object to enhancements during sentencing and on appeal.  To the extent Matsunaga is objecting to his counsel's performance during resentencing,

Matsunaga has not established ineffectiveness.

At the original sentencing Matsunaga's attorney objected to the two-level enhancements for physical restraint, fleeing from a law enforcement officer, and carjacking, and to the sentence itself.  Matsunaga cannot establish ineffectiveness given these objections.

Matsunaga then argues that his counsel performed unreasonably by failing to challenge the sentencing enhancements during resentencing.  However, on remand the district court's job, as ordered by the Ninth Circuit, was to determine the limited issue of whether it would have imposed the same sentence had it known the Sentencing Guidelines were advisory.  This court concluded that it would have.  The narrow inquiry on remand did not permit Matsunaga's counsel to object to any enhancements. See United States v. Combs, 470 F.3d 1294, 1297 (9th Cir. 2006) (noting that a district judge lacked authority, on limited remand, to resentence the defendant without first concluding that a different sentence would have been imposed given knowledge that the Sentencing Guidelines were advisory).

In any event, Matsunaga appealed his resentence on the basis that the district court had erred in determining his offense level.  The Ninth Circuit found that matter not reviewable.  Having raised this point on direct appeal, Matsunaga cannot now seek to relitigate it.  Olney v. United States, 433

F.2d 161, 162 (9th Cir. 1970).

Matsunaga has not demonstrated entitlement to relief in this regard.

G.        Grounds 7 and 8.

Matsunaga argues that his Fifth and Sixth Amendment rights were violated when the court adopted the findings in the PRS as findings of fact.   In Ground 7, Matsunaga argues that, given his objections to certain findings in the PSR, the court should not have relied on those findings when determining his sentence.   In Ground 8, Matsunaga says that this court unconstitutionally sentenced Matsunaga above the "statutory maximum" based on the court's finding of additional facts.   He says his counsel was ineffective in failing to raise this issue on appeal.   Matsunaga has not established entitlement to relief.

A court may adopt the factual findings of a PSR. United States v. Williams, 41 F.3d 496, 499 (9th Cir. 1994).   A court "may rely only on an unchallenged PSR to find that the facts underlying a sentence enhancement have been established by a preponderance of the evidence."   United States v. Charlesworth, 217 F.3d 1155, 1160 (9th Cir. 2000).   "However, when a defendant raises objections to the PSR, the district court is obligated to resolve the factual dispute, see Fed. R. Crim. P. 32(i)(3)(B), and the government bears the burden of proof to establish the factual predicate for the court's base offense level

determination." <u>United States v. Ameline</u>, 409 F.3d 1073, 1085–86
(9th Cir. 2005).  Of course, if a defendant does not challenge
the accuracy of the information in the PSR, and does not offer
any evidence to contradict the PSR, a court may most certainly
rely on the PSR.  <u>Id.</u>

Matsunaga's problem is that he does not now, and did
not earlier, object to specific factual findings in the PSR.
Instead, he objects only to the guideline computations for the
offense level as legally incorrect.  Matsunaga objects based on
the ground that he personally did not physically inflict any
injury, restrain anyone, commit any carjacking, or create a
substantial risk of death or serious bodily injury to another.
He does not (and did not earlier) argue that his co-conspirators
did not take those actions, merely that he is not responsible for
their actions.  Pursuant to U.S.S.G. § 1B1.3(a)(1)(B), it is
irrelevant whether he personally committed any of those acts.  In
the case of jointly undertaken criminal activity, all reasonably
foreseeable acts and omissions of others in furtherance of the
offense or in preparation of the offense are considered.
Finally, Matsunaga makes a legal objection, challenging the
statutory minimum for the sentence.  This has nothing to do with
the facts of the case.

While Matsunaga also argues that his appellate counsel
was ineffective in failing to raise issues on appeal, his counsel

36

did raise sentencing arguments unsuccessfully on both appeals. Matsunaga has not established ineffectiveness or shown any prejudice.

        H.          Ground 9.

Matsunaga argues that the Superseding Indictment was deficient because it failed to give him proper notice that he was charged with aiding and abetting in a § 924(C) offense. This court is unpersuaded.

Matsunaga was charged in the Superseding Indictment with having violated 18 U.S.C. § 2, which provides that whoever aids, abets, counsels, commands, induces, or procures an offense against the United States is punishable as a principal. Thus, while Matsunaga and Hayme were charged with carrying certain types of weapons during a crime of violence, they were also charged with aiding and abetting each other in the carrying of such weapons. As such, each could be tried as a principal for the other's crimes. This is sufficient notice to Matsunaga that he was charged with aiding and abetting Hayme.

Matsunaga appears to argue that the Government did not proceed under an aiding and abetting theory, instead relying solely on conspiracy. However, the Government need not tell a defendant how it will try its case. Matsunaga had notice of the charges against him, and the jury reasonably found him guilty of certain of those charges.

37

V.        This Court Declines to Issue a Certificate of
          Appealability.

         A petitioner must obtain a certificate of appealability

before pursuing any appeal from a final order in a § 2255

proceeding.  See 28 U.S.C. § 2253(c)(1)(B).

         When the denial of a § 2255 motion is based on the

merits of the claims in the motion, a court should issue a

certificate of appealability only when the appeal presents a

"substantial showing of the denial of a constitutional right."

28 U.S.C. § 2253(c)(2).  A certificate must issue if reasonable

jurists could debate whether the issues should have been resolved

differently or are "adequate to deserve encouragement to proceed

further."  Slack v. McDaniel, 529 U.S. 473, 483 (2000) (quoting

Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983), superseded on

other grounds by 28 U.S.C. § 2253(c)(2)); see also Mendez v.

Knowles, 556 F.3d 757, 771 (9th Cir. 2009).  The district court

must indicate which specific issue or issues satisfy the standard

for issuing a certificate, or state its reasons for denying a

certificate.  United States v. Asrar, 116 F.3d 1268, 1269 (9th

Cir. 1997).

         The court declines to issue a certificate of

appealability.  Reasonable jurists would not find this court's

assessment of Matsunaga's claims debatable or wrong.

Accordingly, the court declines to issue a certificate of

appealability.

VI.              <u>CONCLUSION.</u>

          The court denies Matsunaga's § 2255 petition without an evidentiary hearing and declines to issue a certificate of appealability.


               IT IS SO ORDERED.

               DATED: Honolulu, Hawaii July 22, 2010.



               /s/ Susan Oki Mollway

               Susan Oki Mollway
               Chief United States District Judge


<u>United States v. Matsunaga</u>, 99cr473; 09cr474; ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT A SENTENCE BY A PERSON IN FEDERAL CUSTODY UNDER 28 U.S.C. § 2255.