IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 99-00473 SOM |
| | ) | CIV. NO. 09-00474 SOM/KSC |
| Plaintiff, | ) | |
| | ) | AMENDED ORDER DENYING MOTION |
| vs. | ) | TO VACATE, SET ASIDE, OR |
| | ) | CORRECT A SENTENCE BY A |
| SEAN MATSUNAGA, | ) | PERSON IN FEDERAL CUSTODY |
| | ) | UNDER 28 U.S.C. § 2255 |
| Defendant. | ) | |
| _____ | ) | |

AMENDED ORDER DENYING MOTION TO VACATE,
SET ASIDE, OR CORRECT A SENTENCE BY A PERSON IN
FEDERAL CUSTODY UNDER 28 U.S.C. § 2255

I.      INTRODUCTION.

        In 1999, Sean Matsunaga and three other men robbed a
bank in Oahu.  They stole more than $100,000, shot at the police,
and injured innocent bystanders.  A jury found Matsunaga guilty
of conspiracy, bank robbery, and two counts of carrying a firearm
during a crime of violence, which was the robbery.  After two
unsuccessful appeals, Matsunaga brought a petition under 28
U.S.C. § 2255, arguing that his sentence and conviction were
erroneous in eleven ways.

        This court denied his petition on July 22, 2010.  Since
that time, Matsunaga has filed his untimely Reply, received by
the court almost a month after his Reply was due.  Matsunaga
attributes the untimeliness of his Reply to a "mailing error."
Although uncertain what "mailing error" Matsunaga is referring
to, this court now replaces its earlier order with the present

amended order, which takes into account the belated Reply.  Even after careful consideration of Matsunaga's Reply, this court denies Matsunaga's petition and  again declines to issue a certificate of appealability.  To eliminate any confusion as to any appeal deadline, this court vacates the judgment entered previously and directs that judgment be entered anew following the filing of the present amended order.

II.        STANDARD OF REVIEW.

     Under § 2255, a court may grant relief to a federal prisoner who challenges the imposition or length of his or her incarceration on any of the following four grounds: (1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; or (4) that the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255(a).  A petitioner must allege specific facts that, if true, would entitle the petitioner to relief.  See United States v. Rodrigues, 347 F.3d 818, 824 (9th Cir. 2003) (citing United States v. McMullen, 98 F.3d 1155, 1159 (9th Cir. 1996)).

     A § 2255 petition cannot be based on a claim that has already been disposed of by the underlying criminal judgment and ensuing appeal.  As the Ninth Circuit stated in Olney v. United States, 433 F.2d 161, 162 (9th Cir. 1970), "Having raised this

2

point unsuccessfully on direct appeal, appellant cannot now seek to relitigate it as part of a petition under § 2255."

Even when a § 2255 petitioner has not raised an alleged error at trial or on direct appeal, the petitioner is procedurally barred from raising an issue in a § 2255 petition if it could have been raised earlier, unless the petitioner can demonstrate both "cause" for the delay and "prejudice" resulting from the alleged error.  As the Court said in United States v. Frady, 456 U.S. 152, 167-68 (1982), "[T]o obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and 'actual prejudice' resulting from the errors of which he complains."  Id.; accord Davis v. United States, 411 U.S. 233, 242 (1973).  To show "actual prejudice," a § 2255 petitioner "must shoulder the burden of showing, not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  Frady, 456 U.S. at 170.

A judge may dismiss a § 2255 petition if "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief."  Rule 4(b), Section 2255 Rules.  A court need not hold

an evidentiary hearing if the allegations are "palpably
incredible or patently frivolous" or if the issues can be
conclusively decided on the basis of the evidence in the record.
See Blackledge v. Allison, 431 U.S. 63, 76 (1977); see also
United States v. Mejia-Mesa, 153 F.3d 925, 929 (9th Cir. 1998)
(noting that a "district court has discretion to deny an
evidentiary hearing on a § 2255 claim where the files and records
conclusively show that the movant is not entitled to relief").

III.    BACKGROUND.

On July 7, 1999, Matsunaga, Albert Batalona, Jacob
Hayme, and Roger Dailey robbed the American Savings Bank located
in Kahala on Oahu.  Wearing ski masks and armed with weapons,[1]
they entered the bank and ordered everyone to lie on the floor.
Transcript of Proceedings ("Transcript") Volume 3 at 11-13, 167
(bank employee describing events) (Sept. 26, 2002).  Some bank
employees were pushed to the floor and hit with a rifle.  Id. at
13, 27.  The men took more than $100,000 from the teller cash
dispenser that contained bait bills and dye packs.  Id. at 88-91,
110.  The dye packs exploded when they were taken from the bank.
Id. at 20, 54.

Because a bank employee had pushed a silent alarm that
alerted the police that there was a problem, police were waiting

---

[1]Matsunaga and Hayme carried semiautomatic assault weapons,
while Batalona was armed with a machine gun.  Transcript Volume 5
at 164-71 (Oct. 1, 2002).

4

outside the bank.  Id. at 23.  Batalona shot at the police.  Id.
at 34, 96, 136-38.  Matsunaga, Hayme, and Dailey escaped
together, while Batalona, still armed and wearing a face mask,
stopped a bakery delivery van and escaped in that van.

Shortly thereafter, the four men were arrested.[2]
Subsequently, a Superseding Indictment issued charging Matsunaga
and Hayme with five counts.  Count 1 charged Matsunaga and Hayme
with conspiring with others to rob a bank in violation of 18
U.S.C. § 2113(a).  Count 2 charged Matsunaga and Hayme with bank
robbery in violation of 18 U.S.C. § 2113(a).  Counts 3 and 4
charged Matsunaga and Hayme with knowingly carrying semiautomatic
assault weapons during the robbery in violation of 18 U.S.C.
§§ 921(a)(30), 924(c)(1)(A), and 2.  Specifically, Count 3
charged Matsunaga and Hayme with being responsible for the
carrying of a Norinco .223 semi-automatic assault weapon (Hayme's
alleged weapon), while Count 4 charged Matsunaga and Hayme with
being responsible for the carrying of a AR-15 .223 semi-automatic
assault weapon (Matsunaga's alleged weapon).  Count 5 charged

---

[2]Dailey was arrested, pled guilty to bank robbery, and was
sentenced to a 75-month term of imprisonment.  See Judgment,
99cr442, Docket No. 44 (Aug. 1, 2003).  Hayme and Batalona were
arrested, and Batalona was convicted in state court of robbery,
attempted murder, use of a firearm in the commission of a
separate felony, and possession of a prohibited firearm.  Hayme
pled guilty to Counts 1 to 3 in the Superseding Indictment, and
this court sentenced him to 60 months of imprisonment on Count 1,
92 months of imprisonment on Count 2 (concurrent with the
sentence on Count 1), and 120 months of imprisonment on Count 3
(consecutive to the sentence on Count 2).

Matsunaga and Hayme with being responsible for the carrying of a machine gun (Batalona's alleged weapon).  Id.  Matsunaga was thus charged with carrying three weapons during the bank robbery: two firearms carried by his co-conspirators, and his AR-15 semiautomatic weapon, which was never recovered.

Matsunaga's trial began in September 2003.  Bank employees, the owner of the van that Batalona escaped in, friends of Matsunaga's and Hayme's, police officers, and others testified.  Before closing arguments, the parties met to discuss jury instructions.  Matsunaga objected to a Pinkerton instruction that explained that Matsunaga could be liable for the foreseeable acts of his co-conspirators committed in furtherance of the conspiracy, to the extent the instruction applied to Counts 3, 4, and 5 (knowingly carrying a firearm during a crime of violence).  Matsunaga argued that, under 18 U.S.C. § 924(c), he could not be guilty as a co-conspirator, but only as a principal or as an aider or abettor.  Transcript Volume 7 at 46-47.  According to Matsunaga, the Government had to prove that Matsunaga knew that Batalona and Hayme would carry guns during the robbery; conspiring to commit the robbery, without more, was not sufficient.  The court overruled his objection.

On October 8, 2002, the jury found Matsunaga guilty on Counts 1 through 4 of the Superseding Indictment, but not guilty on Count 5.  This court ordered judgment of acquittal as to Count

5.  This court scheduled a sentencing hearing and requested a Presentence Investigation Report ("PSR").

The PSR calculated Matsunaga's offense level as 32.  In arriving at the total offense level under the then-mandatory United States Sentencing Guidelines, the PSR included a two-level increase for "bodily injury" to a victim pursuant to U.S.S.G. § 2B3.1(b)(3)(A) because Matsunaga's co-conspirators had injured a bank employee and a police officer; a two-level increase for physical restraint of any person pursuant to U.S.S.G. § 2B3.1(b)(4)(B) because Matunaga's co-conspirators ordered bank customers to lie on the floor at gunpoint; a two-level increase for carjacking pursuant to U.S.S.G. § 2B3.1(b)(5) because Batalona had stolen a van and fled from police; and a two-level adjustment for the reckless creation of a risk of death or serious bodily injury in fleeing from a law enforcement officer (reckless endangerment) pursuant to U.S.S.G § 3C1.2 because Batalona and Hayme had shot at police.  Additionally, the PSR noted that Matsunaga was subject to a 10-year term for the § 924(c) offenses.

Matsunaga objected to the two-level increases and to the 10-year term for carrying a semiautomatic weapon.  Matsunaga argued that, because he had not personally injured anyone, the two-level increase for bodily injury was inapplicable.  See Response to Draft Presentence Investigation Report (Jan. 21,

2002); see also Sentencing Transcript at 17 (Jan. 21, 2003).
With respect to physical restraint, Matsunaga argued that merely
pointing a gun at someone and ordering the person to lie on the
floor was not the "physical restraint" contemplated by the
Sentencing Guidelines.  Id. at 18-19.  Additionally, Matsunaga
stated that Batalona's carjacking was a "detour and frolic" from
the conspiracy and was not foreseeable by the other participants,
making the two-level increase for Batalona's carjacking
inapplicable.  Id. at 23.  Matsunaga argued that, as he was not
fleeing law enforcement but instead fleeing the bank, the
two-level adjustment for reckless endangerment was inapplicable.
Id. at 26-28.  Finally, Matsunaga argued that he could only be
sentenced to seven years of imprisonment on the § 924(c) charges.
Matsunaga argued that the Superseding Indictment charged him with
having violated § 924(c)(1)(A) (which states that a person can be
sentenced to a term of not less than seven years for brandishing
a firearm), not § 924(c)(1)(B) (which imposes a mandatory minimum
of 10 years if the firearm is a semiautomatic assault weapon), so
he could not be sentenced to a 10-year term.

        The sentencing hearing spanned two sessions.  At the
first session, held in January 2003, this court overruled
Matsunaga's objections, adopted the PSR as its findings, and
determined that the guideline enhancements were appropriate.
With respect to the 10-year minimum on the § 924(c) charges, the

court stated that, because the Superseding Indictment charged
Matsunaga with having used a semiautomatic assault weapon,
Matsunaga had notice that he could be prosecuted under
§ 924(c)(1)(B), which set a 10-year term of imprisonment for the
use of a semiautomatic weapon.  Id. at 29.  The court then
requested briefing on how to handle the two § 924(c) charges and
continued the sentencing hearing.  Id. at 54.

        At the next sentencing session, the court asked the
parties whether United States v. Franklin, 321 F.3d 1231 (9th
Cir. 2003), decided in March 2003, affected Matsunaga's reckless
endangerment two-level increase and the § 924(c) charges.  With
respect to reckless endangerment, Franklin held that the
Government must prove that a defendant "actively participated" in
the conduct that recklessly endangered others.  Id. at 1237.
Therefore, a defendant who was part of a getaway chase was
"responsible for or brought about" the conduct by both himself
and his co-conspirators that put others at risk.  Id.
Additionally, Franklin held that multiple convictions under
§ 924(c)(1) against one defendant must be consolidated.  Id. at
1241.  This court was concerned about whether it should
consolidate the § 924(c) charges and sentence Matsunaga on only a
single charge, or, alternatively, vacate the conviction on one
charge.  Sentencing Transcript at 8 (Mar. 24, 2003).

        After listening to the parties, the court concluded

that the two-level increase for reckless endangerment was

justified.  The court stated:

> I find that the defendant's conduct did
> constitute reckless endangerment during
> flight.  And in making that finding I
> recognize that that requires a finding by me
> that Mr. Matsunaga did something more than
> just willfully participating in fleeing from
> law enforcement, but I also recognize that I
> can make inferences and rely on evidence of
> what occurred before, during and after they
> fled from law enforcement. . . . [W]hen Mr.
> Matsunaga left the scene, it does seem to me
> that he was fleeing from law enforcement
> [and] the only reason to exchange gunfire was
> because law enforcement was there.
>
> With respect to whether he procured or aided
> and abetted Mr. Batalona's use and Mr.
> Hayme's use of a gun, it does seem to me that
> in the context here where the defendants had
> made plans to make sure they were armed in
> case they needed to use guns, they had joint
> getaway plans, and, indeed, when law
> enforcement arrived, the guns did turn out to
> have to be used.  So, indeed, it could be
> said, I think, that Mr. Matsunaga procured
> the further exchange of gunfire by leaving
> himself and not just giving up. . . .  And
> the act of his getting into the getaway car
> and leaving could well be said to have
> procured further reckless endangerment of
> both Officer Rosskopf and others in the
> neighborhood.

Id. at 14-15.

As to the two § 924(c) charges, the court concluded

that it could not impose a sentence for each charge, as the same

defendant was alleged to be responsible for two guns carried in

furtherance of the same crime.  Because one § 924(c) count

related to Matsunaga's use of a gun, and another § 924(c) count

related to a co-conspirator's use of a gun, the court concluded that it should vacate the conviction on one count.  Id. at 8. The Government moved to vacate the conviction on Count 4 (§ 924(c) charge concerning Matsunaga's alleged weapon) because Matsunaga's weapon was not recovered.  Id. at 14.  The court vacated that conviction.

Matsunaga was sentenced to 60 months of imprisonment on Count 1 (conspiracy), 151 months of imprisonment on Count 2 (bank robbery) running concurrently with Count 1, and 10 years of imprisonment on Count 3 (§ 924(c)) running consecutively to the sentence on Count 2.  Id. at 20-22.  Matsunaga was thus sentenced to a total of 271 months in prison.

Matsunaga appealed in April 2003.  He argued, among other things, that the court had erroneously calculated his sentence.  Ex. D, attached to Government's Response.  Matsunaga challenged the court's two-level increases for injury to a victim and for a co-defendant's carjacking.  Matsunaga argued that, although victims were injured, he did not cause those injuries and they were not foreseeable.  Additionally, Matsunaga stated that it was not foreseeable that his co-conspirator would steal a van.  Id. at 13-14.

The Ninth Circuit found Matsunaga's arguments unavailing and affirmed this court.  As to the enhancement for the injury to a victim, the Ninth Circuit noted that the

11

Sentencing Guidelines provide that if two defendants agree to commit a robbery, and the first defendant assaults and injures a victim, the second defendant is accountable for the assault and injury, even if the second defendant did not agree to the assault and cautioned the first defendant to be careful. See United States v. Matsunaga, 158 Fed. App'x 783, 785 (9th Cir. 2005). As to the carjacking enhancement, the Ninth Circuit noted that, as three of the men left the fourth co-conspirator behind when they escaped, it was reasonably foreseeable that the stranded co-conspirator would seek another means of escape. Thus, it was foreseeable that Batalona would commit a carjacking.

However, because, after Matsunaga was sentenced, the United States Supreme Court decided United States v. Booker, 543 U.S. 220 (2005), which made the Sentencing Guidelines advisory only, the Ninth Circuit remanded the sentence to this court to "answer the question whether Matsunaga's sentence would have been different had the court known that the guidelines were advisory." Id. at *785 (brackets omitted).

The Probation Office amended the PSR to reflect that the court had vacated the conviction on Count 4 and also to add the sentences imposed on Hayme and Dailey. Matsunaga filed a sentencing memorandum requesting a reduction from 271 months to 255 months of imprisonment.

In 2006, the court resentenced Matsunaga. The court

12

considered whether it would have imposed the same sentence had it
known that the Sentencing Guidelines were advisory.  See
Resentencing Transcript, Docket No. 278 at 7 (Mar. 21, 2006).
The court concluded that it would have imposed the same sentence,
considering, among other things, the nature and circumstances of
the offense, Matsunaga's history and characteristics, and the
seriousness of the crime.  Id. at 8.

     Matsunaga filed an appeal on March 29, 2006, again
challenging, albeit under a different theory, the two-level
increases to his offense level.  Matsunaga argued that this court
had violated Matsunaga's right to a jury trial by enhancing his
sentence based on the court's, not the jury's, factual
conclusions.  Ex. E, attached to Government's Response.
Specifically, Matsunaga argued that his sentence was based on
five extra-verdict, judicial findings: (1) that Matsunaga's
conduct constituted reckless endangerment during flight; (2) that
Matsunaga was responsible for the injury to innocent bystanders;
(3) that Matsunaga physically restrained some victims; (4) that
Matsunaga was responsible for Batalona's carjacking; and (5) that
Matsunaga caused monetary losses.  Ex. E at 31, 37 attached to
Government's Response.  Matsunaga argued that the Government had
not provided notice of these allegations, or their factual bases,
in the Superseding Indictment.  Id.  Matsunaga argued that the
Ninth Circuit should review the sentence for plain error.

13

The Ninth Circuit held that Matsunaga had not raised any reviewable issues because he had challenged the two-level increases on his first appeal and had lost:

> Matsunaga contends that the district court violated his Sixth Amendment rights by relying on judge-found facts to increase his sentence.  We conclude that the district court understood "the full scope of [its] discretion in a post-Booker world," see United States v. Combs, 470 F.3d 1294, 1297 (9th Cir. 2006), and that Matsunaga has not raised any issues that are reviewable, see United States v. Thornton, 511 F.3d 1221, 1226 (9th Cir. 2008).

284 F. App'x 455, 456 (9th Cir. 2008).

On October 8, 2009, Matsunaga filed the present § 2255 petition.  On November 9, 2009, Matsunaga supplemented his petition by filing a 57-page memorandum.  In total, Matsunaga alleges 11 grounds for relief, the majority including some type of ineffective assistance of counsel claim.  On March 23, 2010, the Government filed its response.  This court received Matsunaga's Reply on August 6, 2010.

IV.    ANALYSIS.

As an initial matter, this court notes that Matsunaga raises many arguments for the first time in his § 2255 petition. If a "criminal defendant could have raised a claim of error on direct appeal but nonetheless failed to do so, he must demonstrate both cause excusing his procedural default, and actual prejudice resulting from the claim of error." United

14

States v. Johnson, 988 F.2d 941, 945 (9th Cir. 1993).  Matsunaga

claims that his counsel was ineffective in failing to raise these

arguments during trial and appeal as cause for the delay.

Ineffective assistance of counsel claims are not subject to the

procedural default rule described above.  Massaro v. United

States, 538 U.S. 500, 504 (2003)(holding that "an

ineffective-assistance-of-counsel claim may be brought in a

collateral proceeding under § 2255, whether or not the petitioner

could have raised the claim on direct appeal").  Even after

Massaro, however, a petitioner may not relitigate issues that

were raised and considered on appeal.

        Matsunaga's present petition includes many arguments

that his counsel raised during trial, at sentencing, or on

appeal.  Matsunaga says that his attorneys were ineffective in

the manner in which they pursued those matters.  However, issues

that were previously litigated cannot be relitigated now simply

by renaming them, without more, as ineffective assistance claims.

This court remains convinced that the procedural default rule

applies to those matters, meaning that Matsunaga must show cause

for the delay and prejudice.  He does not do so.

        Nevertheless, in an abundance of caution, and conscious

of the Supreme Court's advice that "it is a better use of

judicial resources to allow the district court on collateral

review to turn at once to the merits," this court addresses the

15

merits of those claims along with the merits of claims Matsunaga says his attorneys never raised at all.  <u>Massaro</u>, 538 U.S. at 507.  Matsunaga does not establish any prejudice resulting from any instance of alleged ineffective assistance of counsel.

> A.       <u>Ground 1.</u>

In Ground 1, Matsunaga contends that the Superseding Indictment was constitutionally defective because it did not provide notice that he could be tried and convicted for Hayme's actions.  Memorandum at 7, 45.  Matsunaga also argues that his counsel was ineffective in failing to challenge the constitutionality of the Superseding Indictment during trial and on appeal.

According to Matsunaga, the Superseding Indictment is defective because it "did not charge that Matsunaga CONSPIRED with Defendant [Hayme] to knowingly carry his firearm in furtherance of the bank robbery."  Memorandum at 10.  Because the Superseding Indictment did not charge Matsunaga with specifically conspiring with Hayme for Hayme to carry a weapon, Matsunaga says he lacked notice that he could be charged under § 924(c) based on Hayme's weapon.  Matsunaga says that "we may only guess whether the grand jury received evidence of, and actually passed on, Matsunaga's prior agreement with Hayme to carry and/or use a

firearm."   Reply at 8 (citations and quotations omitted).[3]
Matsunaga's argument fails.

To give a defendant proper notice, an indictment must
state the elements of an offense charged with sufficient clarity
to apprise a defendant of what he must be prepared to defend
against.  <u>Gautt v. Lewis</u>, 489 F.3d 993, 1003 (9th Cir. 2007).

Matsunaga's Superseding Indictment gave Matsunaga
proper notice of the charges.  Counts 3 to 5 charge him and
Hayme, both as principals and as aiders and abettors, with
knowingly carrying weapons during and in relation to a crime of
violence, in violation of 18 U.S.C. § 924(c).  Count 1 charges
that Defendants conspired to rob a bank by wearing dark clothing
and masks, entering American Savings Bank carrying semiautomatic
assault weapons, and then leaving the parking lot together.
Superseding Indictment ¶¶ 1-6.  It put Matsunaga on specific

_____

[3]To the extent Matsunaga argues that the grand jury did not
have sufficient evidence to return the Indictment, that argument
fails.  The grand jury need only hear the prosecutor's side to
make its determination as to whether an adequate basis exists for
bringing a criminal charge, and the prosecution has no duty to
present evidence to the grand jury that is exculpatory and
favorable to the accused.  <u>United States v. Williams</u>, 504 U.S.
36, 50-56 (1992).  An Indictment may be returned by a grand jury
on a basis of probable cause.  A properly returned Indictment
"conclusively determines the existence of probable cause."
<u>Gerstein v. Pugh</u>, 420 U.S. 103, 118 n.19 (1975); <u>see also</u> <u>United
States v. Williams</u>, 2007 WL 2916123, *5 (D. Haw. Oct. 2, 2007)
("By returning the Indictment, the grand jury found probable
cause that Defendant committed the offenses.").  There is no
evidence that the grand jury improperly returned the Indictment
against Matsunaga.

notice that the weapons referred to included "a Norinco .223 caliber semi-automatic assault weapon" and "an AR-15 .223 caliber semi-automatic assault weapon."  Superseding Indictment at 4-5. Accordingly, Matsunaga had notice that he was charged with violating 18 U.S.C. § 924(c) as a principal (knowingly carrying his gun) and as an aider and abettor (in Hayme's and Batalona's carrying of guns).

Matsunaga argues that his trial counsel and appellate counsel were ineffective by failing to challenge the Superseding Indictment.  As the Superseding Indictment gave Matsunaga proper notice of the charges, Matunaga's counsel did not perform unreasonably.

Matsunaga appears primarily concerned not with defects in the Superseding Indictment, but with certain jury instructions.  Matsunaga argues that this court incorrectly gave the jury a <u>Pinkerton</u> instruction, that is, instructed the jury that Matsunaga could be liable for the foreseeable crimes of co-conspirators taken in furtherance of the conspiracy.

As Matsunaga did not raise this argument on direct appeal, this challenge is procedurally barred unless he can show cause for the delay and prejudice.  <u>See</u> <u>Johnson</u>, 988 F.2d at 945. Matsunaga argues that the reason this issue was not raised earlier is that his counsel was ineffective at trial and on appeal.  However, as his counsel argued against the <u>Pinkerton</u>

18

instruction at trial, Matsunaga cannot establish that his trial counsel was ineffective.  While Matsunaga says that he asked his appellate counsel to challenge the Pinkerton instruction on appeal, Matsunaga has not established that any failure to do so was prejudicial.  That is because the instruction was not erroneous.

Under Pinkerton v. United States, 328 U.S. 640, 647-48 (1946), a person is vicariously liable for reasonably foreseeable substantive crimes committed by a co-conspirator in furtherance of the conspiracy.  A defendant who is charged with conspiracy may also be convicted under a Pinkerton theory for a charged violation of 18 U.S.C. § 924(c), even if it was the defendant's co-conspirator who used and carried the gun.  United States v. Fonseca-Caro, 114 F.3d 906, 908 (9th Cir. 1997).  Of course, if a defendant is not charged with conspiracy, a Pinkerton instruction cannot be given with respect to the § 924(c) charge.  United States v. Nakai, 413 F.3d 1019, 1023 (9th Cir. 2005).

Before closing arguments, the parties discussed whether a Pinkerton instruction on the § 924(c) charges was warranted. Matsunaga's attorney asked the court to instruct the jury that the Government had to prove that Matsunaga had personally carried, or aided and abetted, others in carrying a firearm for the jury to find Matsunaga guilty under § 924(c).  Transcript Volume 7 at 46.  The Government stated that Matsunaga could be

convicted under § 924(c) if it was reasonably foreseeable that

co-conspirators would carry guns in furtherance of the robbery.

This court concluded that the Government was correct, and gave

the jury the following instruction:

> Each member of the conspiracy is responsible
> for the actions of the other conspirators
> performed during the course and in
> furtherance of the conspiracy.  Before you
> may consider the statements or acts of a co-
> conspirator, you must first determine whether
> the acts or statements were made during the
> exercise of and in furtherance of an unlawful
> scheme.
>
> Once you have decided that a defendant was a
> member of the conspiracy, that defendant is
> responsible for what the other conspirators
> said or did to carry out the conspiracy, even
> if the defendant did not know what they said
> or did.
>
> For the defendant to be found guilty of an
> offense allegedly committed by a conspirator
> as part of the conspiracy, the offense muse
> be one which could reasonably have been
> foreseen to be a necessary or natural
> consequence of the unlawful agreement.

Id. at 148.

Matsunaga argues that a Pinkerton instruction applies

only to a conspirator,[4] and that he was not charged with

---

[4]Matsunaga also argues that the court "constructively
amended" the Superseding Indictment by broadening the jury
instructions in a way that allowed the jury to convict him of an
offense with which he was never charged.  Memorandum at 12.
However, as Matsunaga was charged with these offenses, the court
could not have constructively amended the Superseding Indictment.
"An amendment of the indictment occurs when the charging terms of
the indictment are altered, either literally or in effect, by the
prosecutor or a court after the grand jury has last passed upon

conspiracy in Counts 3 to 5.  Matsunaga belabors this point in
his Reply, saying:

> If the Government were to have its way, it
> would frame future indictments by charging a
> conspiracy only in the initial count of the
> indictment and pursue any additional
> charges/counts in the indictment under that
> single blanket conspiracy charge, to cover
> the entire indictment.  This would not meet
> minimum constitutional standards.

Reply at 6.

Matsunaga's argument is premised on a confused
understanding of the nature of § 924(c) charges and conspiracy
charges.  Section 924(c) makes it a crime for any person to use
or possess a firearm in furtherance of a crime of violence, such
as a bank robbery.  While an individual must use or possess a
weapon to be guilty for a § 924(c) charge, a conspirator may be
liable for the *reasonably foreseeable* acts of his
co-conspirators.  See United States v. Alvarez-Valenzuela, 231
F.3d 1198, 1203-04 (9th Cir. 2000) (noting that a defendant
charged with conspiracy to possess and distribute drugs, and with
possessing a gun in violation of § 924(c), could be found guilty

_____

them." United States v. Freeman, 498 F.3d 893, 907 (9th Cir.
2007) (quotations omitted).  A constructive amendment occurs when
there is "a complex of facts [presented at trial] distinctly
different from those set forth in the charging instrument," or
when "the crime charged [in the indictment] was substantially
altered at trial, so that it was impossible to know whether the
grand jury would have indicted for the crime actually proved."
Id. (quotations omitted).  No constructive amendment occurred in
this case.

21

of violating § 924(c) even though there was no evidence that the
defendant actually possessed the gun, because a jury could
reasonably conclude that it was foreseeable that a
co-conspirator's gun would be present during the conspiracy);
United States v. Castaneda, 9 F.3d 761, 765 (9th Cir. 1993)
(noting that a conspirator may be held vicariously liable for a
co-conspirator's carrying of a firearm in relation to an offense
under § 924, but holding that, in the specific case, a
coconspirator who only had a passive role in a drug conspiracy
could not be liable for a co-conspirator's possession of a gun);
see Warfield v. Grams, 2009 WL 236636, *8, *1 (W.D. Wis. Jan. 30,
2009) (holding that the defendant was liable for his
co-conspirator's possession of a gun under § 924(c) when the
defendant knew that his co-conspirators planned to commit a
robbery, was present as the getaway driver during the robbery,
and knew that his co-conspirators were entering the house
carrying guns).

Matsunaga appears to argue that the Government
proceeded against him by charging him with a blanket conspiracy
count plus other, entirely unrelated counts, and pursued the
entirely unrelated counts on a Pinkerton theory of liability.  Of
course, the Government would be prohibited from taking such
action.  It must be foreseeable that a co-conspirator's crime was
to be committed in furtherance of the conspiracy.  As one court

22

aptly stated:

> The point of <u>Pinkerton</u> is to insure that a
> defendant is not held liable for the acts of
> his co-conspirators unless the government can
> prove that the act in question was done in
> furtherance of the conspiracy, that it fell
> within the scope of the unlawful project and
> that it was not merely a part of the
> ramifications of the plan which could not be
> reasonably foreseen as a necessary or natural
> consequence of the unlawful agreement.

<u>Grams</u>, 2009 WL 236636, at *1 (quotations omitted).  The question
is, therefore, "was it reasonably foreseeable to [Matsunaga] that
a firearm would be used *in relation to the predicate offense?*"
<u>Castaneda</u>, 9 F.3d at 766.  The evidence shows that it was
foreseeable to Matsunaga that Hayme would carry his firearm in
furtherance of the robbery and in furtherance of the conspiracy
to rob the bank.  Dailey testified that, before the robbery, the
men discussed the weapons that they were going to bring.
Transcript Volume 5 at 154-55.  When Dailey questioned the
decision to bring weapons, Batalona allegedly responded that they
were going to bring guns.  <u>Id.</u> at 161.  While the four men were
driving to the bank, the men loaded magazines in the guns.  <u>Id.</u>
at 168.  It was foreseeable that Hayme would use a gun during the
bank robbery.

Because Matsunaga was charged with a conspiracy to rob
a bank, and because he and his co-conspirators used weapons in
the process, the court did not err in giving a conspiracy
instruction that applied to any gun charge.

23

B.        Ground 2.

Matsunaga argues in his Reply that his counsel was ineffective in failing to move for judgment of acquittal at the close of all the evidence.  Matsunaga also argues in his earlier lengthy memorandum that his trial counsel was ineffective in failing to properly support a motion for acquittal brought at the close of the Government's case.  Matsunaga says his sentencing counsel was ineffective in allowing this court to sentence Matsunaga on Count 3, instead of Count 4.  Finally, he says that appellate counsel was ineffective in failing to raise that issue on appeal.  Matsunaga has not established ineffectiveness.

To prevail on an ineffective assistance of counsel claim, a petitioner must show both that his counsel's performance fell below an objective standard of reasonableness, and that the deficiency in his counsel's performance prejudiced him.  Strickland v. Washington, 466 U.S. 668, 688, 692 (1984).  There is a "strong presumption" that counsel's conduct was reasonable.  Id. at 689.

At the close of the Government's case, Matsunaga's counsel orally moved for judgment of acquittal.  Transcript Volume 7 at 80.  The court immediately denied the motion, and asked that the defense proceed.  Id.  Matsunaga's counsel again moved for judgment of acquittal at the close of the evidence, and this court denied the motion.  Id. at 164.

24

Matsunaga argues that his counsel was ineffective in failing to support the motion for acquittal with evidence. However, Matsunaga does not identify what evidence would have established that Matsunaga was entitled to such judgment.

A motion for judgment of acquittal is reviewed on a sufficiency-of-the-evidence standard.  United States v. Graf, 610 F.3d 1148, *13 (9th Cir. 2010).  Under that standard, the evidence supports a conviction, if, viewed in the light most favorable to the Government, it would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt.  Id.

Having listened to the Government's case, the court had before it all the evidence that had been admitted.  Based on the testimony of bank employees, Matsunaga's co-conspirator Dailey, and others, this court concluded that the evidence was sufficient to allow the jury to find the essential elements of the charged crimes beyond a reasonable doubt.  There was sufficient evidence that the men, including Matsunaga, had met, planned, and discussed the bank robbery (conspiracy), carried out that bank robbery (bank robbery), and knowingly carried semiautomatic weapons and a machine gun to rob the bank (§ 924(c) charges). While the jury found that Count 5 was not proved beyond a reasonable doubt, on a motion for judgment of acquittal, the court looks at the evidence in the light most favorable to the

Government.  Accordingly, Matsunaga has not shown that his counsel was ineffective or that Matsunaga was prejudiced with regard to the motion for judgment of acquittal.

Matsunaga argues next that his appellate counsel was ineffective in failing to argue that the evidence was insufficient to support a guilty verdict on Count 3.  Matsunaga argues that he was wrongly convicted on Count 3 because he did not carry Hayme's gun.  Matsunaga is simply incorrect.

The court instructed the jury that Matsunaga could be guilty, even if he did not personally carry the weapon, as a conspirator or aider and abettor.  This court gave a proper conspiracy instruction, as a defendant charged with conspiracy may be convicted under § 924(c) based on his co-conspirator's use of a weapon.  The court also gave an aiding and abetting instruction.  To be guilty of aiding and abetting the carrying of a firearm during and in relation to a crime of violence under § 924(c), the court stated that the Government had to prove that (1) a firearm was carried by someone during and in relation to a crime of violence; (2) Matsunaga knowingly and intentionally aided, counseled, commanded, induced, or procured that person to carry a firearm during the crime of violence; and (3) Matsunaga acted before the crime was completed.  Transcript Volume 7 at 153-154.  The court stated, "The evidence must show beyond a reasonable doubt that the defendant acted with the knowledge and

26

intention of helping that person commit carrying a firearm during and in relation to a crime of violence." Id. at 154.

There was overwhelming evidence that Matsunaga could have been liable as a co-conspirator or as an aider and abettor. With respect to the conspiracy, Hayme pled guilty to having carried a weapon in furtherance of the crime. A jury conclusion that Matsunaga, as a co-conspirator, was guilty based on Hayme's foreseeable actions in furtherance of the robbery would have been consistent with applicable law and the trial evidence.

With respect to aiding and abetting, there was evidence that Hayme and Matsunaga carried weapons, that Matsunaga aided and abetted Hayme in using his weapon, and that Hayme used it in furtherance of the bank robbery. There was evidence that before the robbery, Batalona, Hayme, and Matsunaga discussed carrying their weapons during the robbery. Transcript Volume 5 at 154-155. Shortly before the robbery, Hayme placed a magazine into Matsunaga's gun. Transcript Volume 5 at 168. Additionally, there was evidence that Hayme and Matsunaga carried and brandished their weapons when entering the bank, throughout the robbery, and during the escape.[5]

---

[5]Additionally, at sentencing, this court acknowledged that, while mere knowledge that a firearm is to be used is insufficient to create aiding and abetting liability, there was sufficient evidence that Matsunaga facilitated and encouraged the carrying of the firearm. Sentencing Transcript at 14-15 (Mar. 24, 2003).

27

Matsunaga argues that he did not encourage Hayme to shoot the gun.  However, evidence that Matsunaga encouraged Hayme's carrying or possession of the gun during the bank robbery is sufficient to sustain Matsunaga's conviction; Matsunaga need not have encouraged Hayme to shoot.

C.      Ground 3.

Matsunaga argues that his counsel was ineffective in failing to argue that the court should sentence Matsunaga to Count 4, not Count 3.  Matsunaga has not established ineffectiveness.

The jury found Matsunaga guilty of Counts 3 and 4, which charged Hayme and Matsunaga with having carried weapons in furtherance of a crime in violation of § 924(c).  Because the counts arose out of the same offense, this court did not sentence Matsunaga on both of them.  See Franklin, 321 F.3d at 1241 ("Multiple counts charged under section 924(c)(1) must be consolidated either before or after trial, and before sentencing, so that there will be only one section 924(c)(1) conviction for one predicate offense.") (internal quotations omitted).  The Government requested that the court sentence Matsunaga on Count 3 (allegedly involving the gun Hayme used) because Matsunaga's gun was not recovered, Hayme's gun was recovered, and Hayme had pled guilty to using that weapon.  Matsunaga's counsel suggested that the court dismiss Count 4.  The court vacated the conviction on

28

Count 4.

Matsunaga argues that his counsel performed unreasonably by failing to ask this court to sentence him to Count 4. Matsunaga says that, had he been sentenced on Count 4, there is a reasonable probability that he would have been successful in appealing his conviction because the evidence did not support a conviction under Count 4. Memorandum at 22-23. Matsunaga argues he was prejudiced because, had this court sentenced him on Count 4 instead of vacating it, he might have won his appeal. Matsunaga has not established prejudice, as the evidence overwhelmingly established his guilt as to Count 4.

Matsunaga claims that he could not have been guilty as to Count 4 because the gun was never recovered and there was no evidence that he ever possessed the gun. Recovery of the actual gun was not necessary to support his conviction. Evidence at trial indicated that Matsunaga admitted to a friend and to his girlfriend that he had robbed the bank. Transcript Volume 4 at 76, 176. Matsunaga's girlfriend, after the robbery, found Matsunaga putting a stash of money in a shoe box. Id. at 170. There was evidence that Batalona had many semiautomatic guns and could have lent one to Matsunaga. Id. at 103-106. Finally, there was evidence that Matsunaga carried an M-16 during the robbery. Transcript Volume 5 at 164. Many bank employees testified that they saw three men with guns, Matsunaga having

29

been one of them.  A reasonable jury could conclude from the evidence that Matsunaga carried a firearm during the robbery. Accordingly, Matsunaga has not shown that he was prejudiced by his counsel's failure to move to vacate Count 3 instead of Count 4.

    D.   <u>Ground 4.</u>

   Matsunaga argues that he suffered a dramatic and inappropriate enhancement of his sentence.  Matsunaga argues that the court applied the "preponderance of the evidence" standard when it should have applied a "clear and convincing" standard. Memorandum at 24-25.  Matsunaga argues that the "clear and convincing" standard applied to four sentencing enhancements that dramatically increased his sentence, and says the "combined impact of the contested sentencing enhancements are extremely disproportionate relative to the offense of conviction, and where the evidence in support of the enhancements was not overwhelming."  <u>Id.</u> at 24.  Matsunaga argues that his counsel was ineffective in failing to object.  Matsunaga has not established that he can bring this claim here, that he was prejudiced, or that the court applied the wrong standard.

   First and foremost, because Matsunaga's trial attorney objected to the enhancements, and Matsunaga's appellate attorney appealed two of the enhancements (injury to a victim and carjacking), Matsunaga's attorneys were not ineffective.

30

Matsunaga's attorney filed objections during the sentencing phase
to the PSR, stating that the four enhancements were unjustified.
During the sentencing hearing, Matsunaga's attorney explained his
reasoning for the objections.  This court overruled the
objections.  <u>See</u> Barbee Decl. ¶¶ 6-7 attached as Ex. A, to
Government's Response.

          Matsunaga's appellate attorney objected to two
enhancements.  Ex. C, attached to Government's Response.  It may
be that Matsunaga's appellate counsel made a strategic decision
to assert the most compelling arguments (i.e., that two
enhancements were particularly unwarranted).  <u>See</u> <u>Matylinsky v.</u>
<u>Budge</u>, 577 F.3d 1083, 1091 (9th Cir. 20009) ("Because advocacy is
an art and not a science, and because the adversary system
requires deference to counsel's informed decisions, strategic
choices must be respected in these circumstances if they are
based on professional judgment.") (quoting <u>Strickland</u>, 466 U.S.
at 681).

          As noted earlier in this order, any enhancements that
were challenged earlier cannot be challenged here absent a
showing of cause for the delay and resulting prejudice.  <u>Bousley</u>
<u>v. United States</u>, 523 U.S. 614, 622 (1998); <u>Olney v. United</u>
<u>States</u>, 433 F.2d 161, 162 (9th Cir. 1970).  As to cause,
Matsunaga says that his attorneys were ineffective in failing to
specifically address during trial and on appeal the application

of the "clear and convincing" standard.  This argument is not a winning one.  There is no evidence that this court in fact applied a "preponderance of the evidence" standard instead of a "clear and convincing" standard, or that the evidence did not support a "clear and convincing" standard such that application of the "clear and convincing" standard would have resulted in a different outcome.

The court increased Matsunaga's offense level by a total of twelve points, based on two-level increases for: (1) property taken from a financial institution; (2) bodily injury of a victim; (3) physical restraint of a person; (4) an offense involving carjacking; (5) monetary loss between $50,000 and $250,000; and (6) reckless endangerment.  Matsunaga argues only that this court should have determined four of the two-level enhancements (putting aside the enhancements for property taken from a financial institution and monetary loss) by "clear and convincing" evidence.  Reply at 13.

The record does not clearly reflect what standard the court used.  At one sentencing session, the court noted that it relied on inferences to determine that the reckless endangerment enhancement was warranted.  However, even inferences could satisfy a "clear and convincing" standard.  Regardless of what standard was used, there was, in fact, "clear and convincing" evidence supporting the enhancements.

32

With respect to the physical restraint, there was unrefuted evidence that people were pushed to the floor at gunpoint.  Sentencing Transcript at 20.

With respect to reckless endangerment, a police officer testified that a masked gunman "immediately opened fire" upon seeing the officer.  Transcript Volume 4 at 181-82.  The police officer observed muzzle flashes and heard the rounds being fired, and he dove for cover behind a car.  Id. at 182-83.  There were "over a dozen" shots fired at the police officer.  Id. at 192.  There was unrefuted evidence that bullets went across the street and into people's kitchens and cars.  Sentencing Transcript at 27.

With respect to injury, a police officer "received some scrapes and bruises to [his] hands, elbows, and knees" as a result of the shootout with Batalona.  Transcript Volume 4 at 192.  Evidence in the form of pictures of the police officer's uniform and condition was admitted at trial.  Id. at 193-95.

With respect to carjacking, there was unrefuted testimony by the driver whose vehicle was taken confirming the carjacking, and the record made it clear that a co-conspirator's carjacking was foreseeable once Matsungaga and other conspirators left the co-conspirator stranded.  Sentencing Transcript at 24.

Thus, even if this court wrongly applied a "preponderance of the evidence" standard at sentencing, which is

33

not at all clear, Matsunaga does not show that a different result would have flowed from application of a "clear and convincing" standard.  He does not, for example, identify evidence that weighed in his favor for sentencing purposes, or show that the evidence before the court was less than "clear and convincing." See United States v. Fry, 322 F.3d 1198, 1201 (9th Cir. 2003). Instead, he merely says that a different, shorter sentence "for the robbery charges would result if the case were remanded." Reply at 13.  However, a shorter sentence would not necessarily result from a remand; the court would only determine whether there was clear and convincing evidence supporting the enhancements.

Tellingly, application of the "clear and convincing" standard was probably not required.  "A district court generally uses a preponderance of the evidence standard of proof when finding facts at sentencing."  United States v. Armstead, 552 F.3d 769, 776 (9th Cir. 2008) (internal quotations omitted). Only "when a sentencing factor has an extremely disproportionate effect on the sentence relative to the offense of conviction" must a court find the facts by "clear and convincing" evidence. Id. (internal quotations omitted).

Six factors are examined to determine whether the "clear and convincing" standard applies:

> (1) whether the enhanced sentence falls
> within the maximum sentence for the crime

34

> alleged; (2) whether the enhanced sentence
> negates the presumption of innocence for the
> crime alleged in the indictment; (3) whether
> the facts offered in support of the
> enhancement create new offenses requiring
> separate punishment; (4) whether the increase
> in sentence is based on the extent of a
> conspiracy; (5) whether the increase in the
> number of offense levels is four or less; and
> (6) whether the length of the enhanced
> sentence more than doubles the length of the
> sentence authorized by the initial sentencing
> guideline range where the defendant would
> otherwise have received a relatively short
> sentence.

United States v. Riley, 335 F.3d 919, 926 (9th Cir. 2003).

Although a court must examine the totality of the circumstances

in determining what standard to apply, in some circumstances, the

"clear and convincing" standard may apply when "only the two

final factors favor its application."  United States v. Gonzalez,

492 F.3d 1031, 1040 (9th Cir. 2007) (citations omitted); United

States v. Jordan, 256 F.3d 922, 934 (9th Cir. 2001) (O'Scannlain,

J., concurring) ("[W]e appear to have consistently held that when

the enhancement is greater than four levels and more than doubles

the applicable sentencing range, then the enhancements must be

proved under the 'clear and convincing' standard of proof.").

As to the first element, Matsunaga says that his

"sentence of 151 months does not fall within the maximum sentence

of 37-46 months for a violation of § 371 and § 2113(a)."

Memorandum at 28.  Matsunaga is confusing guideline ranges with

statutory maximums.  The maximum sentence for Count 1, charging

conspiracy, is 5 years, while the maximum sentence for Count 2, charging bank robbery, is 20 years.  Matsunaga was sentenced to 5 years on Count 1, and 151 months on Count 2, to run concurrently with Count 1.  His sentence was well within the maximum sentence.

As to the second element, the enhanced sentence did not negate the presumption of innocence or the prosecution's burden of proof for the crime alleged.

As to the third element, the increases did not create new punishments.  All increases related to actions taken in furtherance of the bank robbery.

As to the fourth element, the increases were based on the extent of the conspiracy.  "The fact that an enhancement is based on the extent of a conspiracy for which the defendant was convicted weighs heavily against the application of the clear and convincing evidence standard of proof."  Riley, 335 F.3d at 926. The conspiracy was an agreement to take money from a bank (property taken from a financial institution and monetary loss). Similarly, the physical restraint of a person, the bodily injury inflicted, the carjacking, and the reckless endangerment were all directly related to the force, violence, and intimidation used in furtherance of the conspiracy.  See United States v. Treadwell, 593 F.3d 990, 1001 (9th Cir. 2010) (holding that a 22-level increase in the defendant's guideline range does not require clear and convincing evidence because the increase was based on

36

the extent of the criminal conspiracy).

        With respect to the fifth element, which concerns
whether enhancements total more than four offense levels, no one
enhancement applied to Matsunaga was greater than two levels.
Even if the court aggregates the enhancements, the total of
twelve levels of enhancement does not disproportionately increase
Matsunaga's sentence.  Increases that relate to the extent of a
conspiracy are not generally disproportionate.  See Treadwell,
593 F.3d at 1001 (noting that sentencing enhancements based in
the extent of conspiracy do not require a heightened standard of
proof).  In any event, the Ninth Circuit has never stated that a
heightened standard of proof automatically applies whenever (and
solely because) the number of increased offense levels is greater
than four.  United States v. Pike, 473 F.3d 1053, 1058 (9th Cir.
2007).

        With respect to the sixth element, Matsunaga says that
four of the enhancements "increased [his] offense level by 8 and
sentencing range from 37-46 months to 87-108 months, thereby
having a disproportionate impact upon his sentence."  Reply at
13-14.  As to Counts 1 and 2 (conspiracy and bank robbery), there
was a total of six enhancements, two of which (property taken
from a financial institution and monetary loss) Matsunaga does
not challenge.  With all six enhancements, Matsunaga's guideline
range was 135 to 168 months.  In any event, the totality of the

circumstances and the grounding of the other enhancements in the extent of the conspiracy suggest that a "clear and convincing" standard did not apply.

Matsunaga has not established entitlement to relief. Having already challenged two of the enhancements in his first appeal, he may not now challenge the evidentiary standard allegedly applied to those enhancements.  With respect to the other enhancements he challenges here, his appellate counsel may have made a reasonable decision not to challenge them, out of concern about diluting the force of his other challenges. Finally, Matsunaga does not show that a "clear and convincing" standard applies, or, even if it does apply, that the court applied the wrong standard, or that the evidence supporting the enhancements was less than "clear and convincing."  Under these circumstances, he does not establish that he was prejudiced by any alleged ineffectiveness of counsel in this regard.

E.        Grounds 5, 10, and 11.

Matsunaga argues that this court engaged in double-counting when imposing Matsunaga's sentence. Specifically, in Ground 5, Matsunaga argues that this court double-counted by sentencing him to 10 years of imprisonment for § 924(c), while at the same time increasing his offense level based on the actions of his co-conspirators (physical restraint, bodily injury, reckless endangerment, and carjacking) during the

38

robbery.  Memorandum at 30.  Matsunaga argues that a defendant

sentenced for violating § 924(c) cannot have his offense level

increased by anything related to the carrying of a firearm.

Matsunaga is incorrect.

The applicable guideline for § 924(c) offenses is

U.S.S.G. § 2K2.4.  That guideline provides that the defendant's

guideline sentence is the minimum term of imprisonment set by

statute.  Note 4 provides:

> If a sentence under this guideline is imposed
> in conjunction with a sentence for an
> underlying offense, do not apply any specific
> offense characteristic for possession,
> brandishing, use, or discharge of an
> explosive or firearm when determining the
> sentence for the underlying offense.  A
> sentence under this guideline accounts for
> any explosive or weapon enhancement for the
> underlying offense of conviction, including
> any such enhancement that would apply based
> on conduct for which the defendant is
> accountable under 1.3 (Relevant Conduct).  Do
> not apply any weapon enhancement in the
> guideline for the underlying offense, for
> example, if (A) a co-defendant, as part of
> the jointly undertaken criminal activity,
> possessed a firearm different from the one
> for which the defendant was convicted under
> 18 U.S.C. 924(c); or (B) in an ongoing drug
> trafficking offense, the defendant possessed
> a firearm other than the one for which the
> defendant was convicted under 18 U.S.C.
> 924(c).

This commentary was added "to clarify under what

circumstances defendants sentenced for violations of 18 U.S.C.

§ 924(c) in conjunction with convictions for other offenses may

receive weapon enhancements contained in the guidelines for those
other offenses." Id.; see also United States v. Diaz, 248 F.3d
1065, 1106-07 (11th Cir. 2001) ("The first sentence of the new
application note reinforces what courts have always known when a
defendant is convicted of a § 924(c) violation and an underlying
offense, the defendant's possession of a weapon cannot be used to
enhance the level of the underlying offense."). This note is
intended to prevent double-counting for firearm use in any one
criminal event. United States v. Pringle, 350 F.3d 1172, 1180
(11th Cir. 2003). Impermissible double-counting occurs when two
offenses arise from the same criminal act, and an enhancement for
one count is applied even though the basis of the enhancement is
the same as the basis for the accompanying count. United States
v. Bowman, 215 F.3d 951, 967-68 (9th Cir. 2000).

A court should not increase a defendant's sentence for
an underlying offense "for the same weapon and the same conduct
that underlie the § 924(c) conviction," but a court may increase
a defendant's sentence if the offense level increase and the
mandatory § 924(c) sentence were "imposed for different
underlying conduct." United States v. Katalinic, 510 F.3d 744,
747 (7th Cir. 2007) (quoting United States v. White, 222 F.3d
363, 373 (7th Cir. 2000)). For example, if a defendant is
convicted of transporting stolen firearms as well as being a
felon in possession of firearms for the same act of possession,

40

it would be double-counting to apply an enhancement for stolen firearms to the felon in possession count.  However, when a defendant brandishes a gun in a bank robbery and is convicted of the bank robbery, an enhancement for brandishing the gun is appropriate if he is not separately convicted for the use of a gun in a crime of violence under 18 U.S.C. § 924(c).  If he is separately convicted under § 924(c), the gun enhancement for the robbery sentence would not be appropriate.  United States v. Duckro, 466 F.3d 438, 445 (6th Cir. 2006).

Matsunaga reads this note to mean that he should not have received enhancements for bodily injury, physical restraint, carjacking, and reckless endangerment because these all relate to the "possession, brandishing, use, or discharge" of a weapon, which was used in the "underlying offense" of the bank robbery. Matsunaga says that Hayme's actions resulting in bodily injury, physical restraint, carjacking, and/or reckless endangerment were accounted for within the § 924(c) conviction as charged in Count 3, and thus could not be the bases for the sentencing enhancements.  Reply at 15.  Matsunaga is incorrect.

This court increased Matsunaga's offense level for bodily injuries, carjacking, reckless endangerment, and physical restraint.  While the actions on which these enhancements occurred during an armed robbery, Matsunaga's sentence was not directly increased because of any brandishing, possessing, or use

41

of a firearm.  If the court had applied the seven-level increase
for a bank robbery that involves the discharge of a firearm
during the course of the robbery, U.S.S.G. § 2B3.1(b)(2)(A), the
court would have inappropriately double-counted.  However, that
seven-level increase was not applied, given this note.  Put
simply, when determining Matsunaga's offense level, the court
considered various harms that occurred; the court did not
increase the offense level because of the brandishing,
possessing, or use of a firearm.

In Grounds 10 and 11, Matsunaga argues that the court
erred when it applied enhancements to his offense level for
serious bodily injury and reckless endangerment.  He says that
the same conduct was the basis for both enhancements, thus
constituting double-counting.  He says that trial and appellate
counsel were ineffective for failing to raise this issue.
However, the same conduct was not the basis for both
enhancements.

The two-level increase for serious bodily injury was
based on injury to an American Savings Bank employee, who, during
the robbery, was hit on the back of his head by a robber, and to
a police officer who had cuts resulting from the gunfire
exchange.  The two-level increase for reckless endangerment
involves the creation of a substantial risk of death when
Matsunaga and others fled from law enforcement.  Hayme discharged

42

his weapon in the course of fleeing the scene, and police officers and others in the nearby area were in danger.  There was evidence that bullets flew across the street and into cars and homes.  This court stated that there was a great risk of injury to others.  Sentencing Transcript at 27 (Mar. 23, 2010).

Matsunaga says that, because the same police officer may have suffered injury (injury to a victim under U.S.S.G. § 2B3.1) and was placed in substantial risk of death by being fired upon (reckless endangerment under U.S.S.G. § 3 C1.2), this court double-counted by imposing both enhancements.  Matsunaga says, "Either [the police officer] was at risk of sustaining bodily injury or he actually sustain[ed] bodily injury."  Reply at 17.  Matsunaga does not establish that being injured and being fired upon represent the same thing, such that only one such item may be counted in a guideline computation.  More importantly, those two enhancements were not based on injury to only that police officer.  There was evidence that an American Savings Bank employee was injured, and there was evidence that others nearby in the area were in danger when Hayme was shooting at the police. In sum, merely because a police officer was injured and placed in danger does not mean that this court double-counted.

As this court did not impermissibly double-count when determining Matsunaga's sentence, Matsunaga has not established that his counsel was ineffective or that he was prejudiced in

that regard.

F.          Ground 6.

          Matsunaga argues that his counsel was ineffective in
failing to object to "any and all enhancements at sentencing."
To the extent Matsunaga objects to his attorney's conduct during
sentencing, Matsunaga's attorney did object to enhancements
during sentencing and on appeal.  To the extent Matsunaga is
objecting to his counsel's performance during resentencing,
Matsunaga has not established ineffectiveness.

          At the original sentencing Matsunaga's attorney
objected to the two-level enhancements for physical restraint,
fleeing from a law enforcement officer, and carjacking, and to
the sentence itself.  Matsunaga cannot establish ineffectiveness
given these objections.

          Matsunaga then argues that his counsel performed
unreasonably by failing to challenge the sentencing enhancements
during resentencing.  However, on remand the district court's
job, as ordered by the Ninth Circuit, was to determine the
limited issue of whether it would have imposed the same sentence
had it known the Sentencing Guidelines were advisory.  This court
concluded that it would have.  The narrow inquiry on remand did
not permit Matsunaga's counsel to object to any enhancements.
See United States v. Combs, 470 F.3d 1294, 1297 (9th Cir. 2006)
(noting that a district judge lacked authority, on limited

44

remand, to resentence the defendant without first concluding that
a different sentence would have been imposed given knowledge that
the Sentencing Guidelines were advisory).

In any event, Matsunaga appealed his resentence on the
basis that the district court had erred in determining his
offense level.  The Ninth Circuit found that matter not
reviewable.  Having raised this point on direct appeal, Matsunaga
cannot now seek to relitigate it.  Olney v. United States, 433
F.2d 161, 162 (9th Cir. 1970).

Matsunaga has not demonstrated entitlement to relief in
this regard.

G.        Grounds 7 and 8.

Matsunaga argues that his Fifth and Sixth Amendment
rights were violated when the court adopted the findings in the
PRS as findings of fact.  In Ground 7, Matsunaga argues that,
given his objections to certain findings in the PSR, the court
should not have relied on those findings when determining his
sentence.  In Ground 8, Matsunaga says that this court
unconstitutionally sentenced Matsunaga above the "statutory
maximum" based on the court's finding of additional facts.  He
says his counsel was ineffective in failing to raise this issue
on appeal.  Matsunaga has not established entitlement to relief.

A court may adopt the factual findings of a PSR.
United States v. Williams, 41 F.3d 496, 499 (9th Cir. 1994).  A

45

court "may rely only on an unchallenged PSR to find that the facts underlying a sentence enhancement have been established by a preponderance of the evidence." United States v. Charlesworth, 217 F.3d 1155, 1160 (9th Cir. 2000). "However, when a defendant raises objections to the PSR, the district court is obligated to resolve the factual dispute, see Fed. R. Crim. P. 32(i)(3)(B), and the government bears the burden of proof to establish the factual predicate for the court's base offense level determination." United States v. Ameline, 409 F.3d 1073, 1085-86 (9th Cir. 2005). Of course, if a defendant does not challenge the accuracy of the information in the PSR, and does not offer any evidence to contradict the PSR, a court may most certainly rely on the PSR. Id.

Matsunaga's problem is that he does not now, and did not earlier, object to specific factual findings in the PSR. Instead, he objects only to the guideline computations for the offense level as legally incorrect. Matsunaga objects based on the ground that he personally did not physically inflict any injury, restrain anyone, commit any carjacking, or create a substantial risk of death or serious bodily injury to another. He does not (and did not earlier) argue that his co-conspirators did not take those actions, merely that he is not responsible for their actions. Pursuant to U.S.S.G. § 1B1.3(a)(1)(B), it is irrelevant whether he personally committed any of those acts. In

46

the case of jointly undertaken criminal activity, all reasonably foreseeable acts and omissions of others in furtherance of the offense or in preparation of the offense are considered. Finally, Matsunaga makes a legal objection, challenging the statutory minimum for the sentence.  This has nothing to do with the facts of the case.

While Matsunaga also argues that his appellate counsel was ineffective in failing to raise issues on appeal, his counsel did raise sentencing arguments unsuccessfully on both appeals. Matsunaga has not established ineffectiveness or shown any prejudice.

H.      Ground 9.

Matsunaga argues that the Superseding Indictment was deficient because it failed to give him proper notice that he was charged with aiding and abetting in a § 924(C) offense.  This court is unpersuaded.

Matsunaga was charged in the Superseding Indictment with having violated 18 U.S.C. § 2, which provides that whoever aids, abets, counsels, commands, induces, or procures an offense against the United States is punishable as a principal.  Thus, while Matsunaga and Hayme were charged with carrying certain types of weapons during a crime of violence, they were also charged with aiding and abetting each other in the carrying of such weapons.  As such, each could be tried as a principal for

47

the other's crimes.  This is sufficient notice to Matsunaga that
he was charged with aiding and abetting Hayme.

Matsunaga appears to argue that the Government did not
proceed under an aiding and abetting theory, instead relying
solely on conspiracy.  However, the Government need not tell a
defendant how it will try its case.  Matsunaga had notice of the
charges against him, and the jury reasonably found him guilty of
certain of those charges.

V.      This Court Declines to Issue a Certificate of
        Appealability.

A petitioner must obtain a certificate of appealability
before pursuing any appeal from a final order in a § 2255
proceeding.  See 28 U.S.C. § 2253(c)(1)(B).

When the denial of a § 2255 motion is based on the
merits of the claims in the motion, a court should issue a
certificate of appealability only when the appeal presents a
"substantial showing of the denial of a constitutional right."
28 U.S.C. § 2253(c)(2).  A certificate must issue if reasonable
jurists could debate whether the issues should have been resolved
differently or are "adequate to deserve encouragement to proceed
further." Slack v. McDaniel, 529 U.S. 473, 483 (2000) (quoting
Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983), superseded on
other grounds by 28 U.S.C. § 2253(c)(2)); see also Mendez v.
Knowles, 556 F.3d 757, 771 (9th Cir. 2009).  The district court
must indicate which specific issue or issues satisfy the standard

48

for issuing a certificate, or state its reasons for denying a certificate.  United States v. Asrar, 116 F.3d 1268, 1269 (9th Cir. 1997).

        The court declines to issue a certificate of appealability.  Reasonable jurists would not find this court's assessment of Matsunaga's claims debatable or wrong. Accordingly, the court declines to issue a certificate of appealability.

VI.        CONCLUSION.

        The court, having now considered Matsunaga's Reply, denies Matsunaga's § 2255 petition without an evidentiary hearing and declines to issue a certificate of appealability.  To avoid confusion as to any appeal deadline, the court vacates the judgment entered earlier and directs that judgment be entered anew, so that the appeal time clearly runs from entry of the new judgment.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii August 26, 2010.



/s/ Susan Oki Mollway

Susan Oki Mollway
Chief United States District Judge

United States v. Matsunaga, 99cr473; 09cr474; AMENDED ORDER DENYING MOTION TO
VACATE, SET ASIDE, OR CORRECT A SENTENCE BY A PERSON IN FEDERAL CUSTODY UNDER
28 U.S.C. § 2255.